*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0314p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

  *v.*

KRISTOPHER ADAM GATES (05-1818) and BRADLEY
WILLIAM CONLEY (05-2006),

    *Defendants-Appellants.*

Nos. 05-1818/2006

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00232—Gordon J. Quist, District Judge.

Argued and Submitted: July 26, 2006

Decided and Filed: August 24, 2006

Before: BATCHELDER and McKEAGUE, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kenneth P. Tableman, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Kenneth P. Tableman, Grand Rapids, Michigan, Edwin L. Hettinger, HETTINGER & HETTINGER PC, Portage, Michigan, for Appellants. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

  McKEAGUE, Circuit Judge. Defendants Gates and Conley appeal their sentences following the entry of guilty pleas to charges arising from their involvement in a counterfeit check cashing scheme. For the reasons that follow, we affirm both sentences.

---

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

# I. BACKGROUND

Gates and Conley participated in an elaborate counterfeit check cashing scheme involving as many as seven individuals. The scheme involved stealing outgoing mail containing checks, creating counterfeit checks using the information procured from the stolen checks, stealing identifications, and then cashing the counterfeit checks at a bank using the stolen identifications. The scheme took place in Michigan, Indiana, Missouri, and Florida.

## A. Appellant Gates's Role

Gates stole outgoing mail from mailboxes in order to obtain bank routing and account numbers from checks. The information obtained from the stolen checks was used to produce counterfeit checks using a computer check-writing program. Gates also admitted to recruiting two other individuals, co-defendants Bradley Heistand and Brent Vreeland, to go into the various banks and cash the counterfeit checks. Testimony from one other individual, Henry Goble, indicates that Gates attempted persistently, but unsuccessfully, to recruit him into the scheme as well.

Gates agreed to plead guilty to Count One of the indictment charging him with conspiring to open U.S. Mail, using stolen identification, and committing bank fraud, in violation of 18 U.S.C. § 371. In exchange for his plea and his cooperation in the investigation, the Government agreed to dismiss the remaining counts of the indictment against Gates, to not oppose a request for reduction of the offense level for acceptance of responsibility, and to consider filing a motion for the reduction of his sentence pursuant to the Sentencing Guidelines § 5K1.1, if he fully cooperated and materially and substantially assisted the Government in the investigation or prosecution of others.

During the sentencing hearing, Gates objected to the Presentence Investigation Report's (PSR) three-level enhancement for his role as a manager in the offense. The PSR indicated that while Gates was not an organizer or a leader, he did serve as a manager by recruiting individuals and directing them to cash the counterfeit checks. The district court overruled Gates's objection, finding that there were sufficient facts to support Gates's role as a manager and that because five or more people were involved, a three-point enhancement under § 3B1.1 was appropriate.

Gates continued to object, asking the court to reconsider. The court emphasized Gates's role as a recruiter of two of the co-defendants and his persistent attempt to recruit Goble, noting that Gates did not just steal checks, but was in between the organizers and those that cashed the checks.

Gates also noted for the record his written objection to fact-finding by a preponderance of the evidence, urging that although Sixth Circuit law is to the contrary, *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005), suggests that facts that cause an increase in the offense level should be found beyond a reasonable doubt. The district court clarified for the record that it had found the facts supporting the sentence enhancement by a preponderance of the evidence, not beyond a reasonable doubt.

Gates also objected to the PSR's finding that he was responsible for $30,549 in loss based on all checks that were cashed in Missouri, and all checks cashed by co-defendant Heistand. Gates stated that he was not aware of the last three checks cashed by Heistand, or any of the Missouri checks. He reminded the court that he admitted to having received between $4500 and $5000 at his plea hearing.

The court overruled the objection to the loss enhancement recommendation in the PSR, but stated that it would not consider any statements given by a confidential informant used in the case. The court found that based on the facts set out in the PSR, most of which came from co-conspirators or Gates himself, it was reasonably foreseeable to Gates that Hiestand would continue to cash checks

using the same scheme. In so deciding, the court pointed out Gates's role in procuring the Missouri checks, and assisting others in cashing them.

The court found that Gates had an offense level of twelve, based on a Base Offense Level of six, a six-level enhancement for a loss of $30,549, a two-level enhancement for use of an unauthorized access device, a three-level enhancement for role as a manager, a three-level decrease for acceptance of responsibility, and a two-level decrease for cooperating with the investigation and assisting in the prosecution of others under § 5K1.1. Additionally, the court considered the § 3553(a) factors. Based on an offense level of twelve, and a criminal history category of VI (because of numerous prior convictions), the court sentenced Gates to thirty-two months imprisonment, three years of supervised release, and restitution of $17,795.

## B. Appellant Conley's Role

Conley was an organizer of the scheme, and he recruited Gates into the plan. Conley was also responsible for obtaining stolen identifications used for cashing the counterfeit checks. According to testimony from co-conspirators, Conley went to bars frequented by college students. Once there, he would seek out patrons that resembled the individuals who would later cash the checks. He would follow the students home, enter their homes, and steal their identifications.

As part of his plea agreement with the Government, Conley agreed to plead guilty to Counts One, Two, Six, and Thirty-Seven of the indictment. Count One charged Conley with conspiring to open the U.S. Mail in violation of 18 U.S.C. § 371; Count Two with obstructing correspondence in violation of 18 U.S.C. § 1702; Count Six with using stolen identification in violation of 18 U.S.C. § 1028; and Count Thirty-Seven, committing bank fraud in violation of 18 U.S.C. § 1344. In exchange for his guilty plea and agreeing to cooperate with the investigation, the Government agreed to move to dismiss the remaining counts of the indictment, to not oppose a request for reduction of his offense level for acceptance of responsibility, and to consider filing a motion for reduction of sentence pursuant to sentencing guidelines § 5K1.1, if Conley fully cooperated and materially and substantially assisted the Government in the investigation or prosecution of others. Conley acknowledged, as part of the plea agreement, that the determination of whether substantial assistance was provided was in the sole discretion of the U.S. Attorney's Office, and that the Government was not promising to file such a motion.

The U.S. Attorney's office did not file a § 5K1.1 motion for a downward departure for substantial assistance to the authorities, choosing instead to file a motion for an upward departure based on the number of victims of the crime and Conley's prior criminal history. JA 205.[1] Conley opposed the motion on the basis that it deprived him of the benefit of his plea bargain and "[left] him out in the cold."

After considering the § 3553(a) factors, the district court found a total offense level of twenty-one. The court determined that Conley had a Base Offense Level of six, and added a ten-level enhancement for an amount of loss of $183,755, a two-level enhancement for more than ten victims, a two-level enhancement for the production or trafficking of unauthorized access devices, a four-level enhancement for Conley's role as an organizer or leader of the conspiracy, and a three-level decrease for acceptance of responsibility. The court found that Conley had a criminal history category of VI, based on numerous prior convictions.

---

[1]While the Government identified the motion as one for an upward departure, the court stated "I don't really think you call those departures anymore, but nonetheless . . . ." The court then proceeded, treating the government's motion as one "for - - you might say, going outside the guideline range." JA 212-213.

Despite the Government's motion for an upward departure, based on the number of victims, the prior criminal history, and the nature of the crimes, the court sentenced Conley within the original guideline calculation.  Conley was sentenced to ninety-six months' imprisonment, sixty months on Counts One and Two, and ninety-six months on Counts Six and Thirty-Seven, to run concurrently; three years supervised release on Counts One, Two and Six, and five years on Count Thirty-Seven, to run concurrently; and restitution in the amount of $129,215.

## II.  ANALYSIS

Gates brings three issues on appeal.  First, he argues that the district court erred in using a preponderance of the evidence standard when it engaged in judicial fact-finding in order to determine his sentence.  He claims that the preponderance standard violated both his Fifth Amendment due process rights and his Sixth Amendment right to jury trial.  Second, he argues that even under a preponderance of the evidence standard, there was insufficient evidence for the court to find that he acted as a manager or supervisor of the scheme.  Third, he argues that the doctrine of constitutional avoidance requires a beyond a reasonable doubt standard for judicial fact-finding at sentencing.

Conley advances one issue on appeal.  He raises a claim of prosecutorial misconduct, because he entered into a plea agreement with the possibility of a § 5K1.1 motion for a downward departure based on substantial assistance to the authorities, yet the government filed a motion for an upward departure based on the number of victims of the crime and Conley's prior criminal history.  We consider each issue in turn.

### A.  Preponderance of the Evidence Standard

Gates argues that the district court erred when it engaged in judicial fact-finding using a preponderance of the evidence standard during his sentencing.  While he acknowledges that this court has, "at least by implication, approved the preponderance of evidence standard of proof," he argues that this standard violates the defendant's right to due process of law.  He claims that *United States v. Booker*, 543 U.S. 220 (2005), did not address a defendant's Fifth Amendment due process rights, and that "when there is a potential loss of liberty the government bears the burden of proving guilt beyond a reasonable doubt."  Appellant's Br. at 15 (quoting *In re Winship*, 397 U.S. 358, 363 (1970)).  He urges the court to "announce a requirement that contested facts that will enhance the sentence range require proof beyond a reasonable doubt."  *Id.* at 19.

In response, the Government claims that since *Booker* was decided, this Court has determined that district courts continue to have the power to engage in fact-finding in sentencing determinations, just as they did prior to *Booker*.  *See United States v. Milan*, 398 F.3d 445, 456 (6th Cir. 2005) (stating "the district court is free to – and obviously will – engage in fact-finding as it considers various options").  Moreover, the Government argues that this court has found that a preponderance of the evidence standard is appropriate for sentencing determinations.  "This Circuit in unreported decisions has held that preponderance is the appropriate burden of proof at sentencing."  Appellee's Br. at 13 (citing *United States v. Rodriguez-Ruiz*, Nos. 04-1697, 04-1754, 2005 WL 3440343 (6th Cir. Dec. 14, 2005); *United States v. Warwick*, No. 04-6265, 2005 WL 2293478 (6th Cir. Sept. 20, 2005)).

This court reviews a constitutional challenge to a sentence *de novo*.  *United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004).  In *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), we stated that judicial fact-finding for sentencing purposes must continue as it was conducted prior to *Booker*, under a preponderance of the evidence standard.  *Id.* at 897-98; *see also United States v. Green*, No. 05-3786, 2006 WL 1307999, at *2 (6th Cir. May 12, 2006) (explaining that "this court

has consistently turned aside constitutional challenges to sentences premised on preponderance of the evidence judicial fact-finding").

We find that the district court committed no Fifth or Sixth Amendment violation when it used a preponderance of the evidence standard.  Prior to *Booker*, the sentencing guidelines called for the use of a preponderance of the evidence standard at sentencing "to meet due process requirements and policy concerns," U.S.S.G. § 6A1.3, and this court held that the requirements of due process were met when courts engaged in fact-finding using a preponderance of the evidence standard. *United States v. Mayle*, 334 F.3d 552, 556 (6th Cir. 2003) (noting that the "Supreme Court has held that application of the preponderance standard at sentencing generally satisfies due process").  Following *Booker*, we stated in *United States v. Milan*, 398 F.3d 445, 455-56 (6th Cir 2005):  "Indeed, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1) which required district courts to sentence defendants 'within the applicable Guidelines range' but recognized that the 'remainder of the [Sentencing Reform Act] functions independently.'"  In *Milan*, we considered the defendant's Sixth Amendment challenge to his sentence, but the rationale underpinning the holding is equally applicable to Gates's Fifth Amendment challenge.  Therefore, we find that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury.

### B.  Sufficiency of the Evidence

Next, Gates argues that even if the preponderance of the evidence standard is proper, there is inadequate evidence to support the enhancement of his sentence.  In particular, he claims that there was inadequate evidence showing that he exercised a leadership role in the check scheme, a finding that led to a three-point enhancement in his sentencing determination.  He claims that although he admitted to recruiting two people into the scheme, he denied that he was a manager or a supervisor.  Further, he claims that there is no factual support for the court's conclusion that he gave instructions to Heistand, another member of the conspiracy, concerning what role Heistand would play.  Gates claims that there was nothing in the PSR to show that he was acting in a management role.  He states that he had no control over the division of proceeds, and that Conley was the one who directed the other conspirators to present the counterfeit checks for cashing. *Id.*

The Government counters Gates's arguments by referring to the sentencing guidelines, which state:  "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." Appellee's Br. at 17 (quoting  U.S.S.G. § 3B1.1(b)).  The comment to the guidelines outline the factors that the district court should consider when deciding whether an enhancement is proper: 1. the exercise of decision making authority; 2. the nature of participation in the commission of the offense; 3. the recruitment of accomplices; 4. the claimed right to a larger share of the fruits of the crime; 5. the degree of participation in planning or organizing the offense; 6. the nature and scope of the illegal activity; and 7. the degree of control and authority exercised over others. *Id.* (citing U.S.S.G. § 3B1.1 cmt., n.4.)  It is not necessary for the defendant to meet each of these requirements. *United States v. Ospina*, 18 F.3d 1332, 1337 (6th Cir. 1994).

Next, the Government cites *United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005), a case with similar facts to those here.  In *McDaniel*, the defendants engaged in a scheme to steal outgoing checks from the U.S. Mail. *Id.* at 543.  Then, they altered the checks and inserted the names of the individuals who were recruited to cash the checks. *Id.*  In that case, we found that even though a defendant was not the primary organizer of the scheme, the fact that he recruited another co-conspirator and taught him the method for altering the checks was enough evidence to support an enhancement as a manager or supervisor. *Id.* at 552.

We review a district court's decision concerning a defendant's role in an offense for clear error. "A district court's determination regarding a defendant's role in the offense is reversible only if clearly erroneous." *United States v. Davis*, 306 F.3d 398, 423 (6th Cir. 2002). In this case, Gates admitted to recruiting other individuals to act as check-cashers. He proposed the scheme to the recruits, drove them to the bank, and shared in the proceeds. *See* Sent. Tr. JA 183 (district court relying on grand jury testimony of co-conspirator to determine Gates's involvement). There is no question that there were more than five participants in the scheme. *See* PSR, JA 225 (listing seven co-defendants). In view of the directions in the sentencing guidelines, and our ruling in *McDaniel*, the district court did not commit clear error when it found that Gates was a manager.

### C.  Constitutional Avoidance

In Gates's final issue on appeal, he claims that the doctrine of constitutional avoidance requires the trial court to use a beyond a reasonable doubt standard at sentencing. He states: "In the absence of statutes or guidelines foreclosing proof beyond a reasonable doubt and where there is a serious doubt as to the constitutionality of the use of the preponderance standard, the court should re-examine [Federal Rule of Criminal Procedure 32] and the Guidelines and interpret them in a way that avoids any constitutional issues." Appellant's Br. at 24.

The Government argues that the doctrine does not apply in this instance, because it is reserved for situations in which the court is asked to choose between competing plausible interpretations of statutory text. The Supreme Court explained the doctrine in *Rust v. Sullivan*, 500 U.S. 173, 190 (1991) (quoting *Blodgett v. Holden*, 275 U.S. 142, 148 (1927)), stating: "as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act."

The Government asserts that there is no ambiguity in the guidelines. "The guidelines clearly state that the sentencing court can consider information that 'has sufficient indicia of reliability to support its probable accuracy.'" Appellee's Br. at 21 (quoting U.S.S.G. § 6A1.3 (a)). The comment to U.S.S.G. § 6A1.3(a) states that the commission believes that a preponderance of the evidence standard is appropriate in order to meet due process requirements for sentencing. *Id.*, cmt.

We review a constitutional challenge to a sentence *de novo*. *United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004). As the Government has properly pointed out, the doctrine of constitutional avoidance is inapplicable here, because the guidelines are not susceptible to two competing interpretations, one that would raise constitutional concerns, and one that would not. For this reason, Gates's final issue on appeal is without merit.

### D.  Conley's Issue on Appeal

Conley advances one issue on appeal. He claims that the district court committed plain error when it failed to find prosecutorial misconduct on the part of the U.S. Attorney for not filing a § 5K1.1 motion, which rendered the proceeding unfair and resulted in a sentence that violates due process. He claims that instead, the Government asked for an upward departure in Conley's sentence in "direct opposition to its promise in the plea agreement entered into with defendant dated March 11, 2005, which states the U.S. Attorney's Office will decide whether to file a motion for a reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure." Appellant's Br. at 4. He claims that the Government left him "out in the cold" when it did not ask for a reduction in his sentence based on his "substantial assistance," and instead asked for an upward departure based on uncharged conduct. Conley does not deny the basis of the Government's request for an upward departure (his breaking and entering in order to steal identifications from his victims), but instead claims that the upward departure "contravenes the spirit of the plea bargain." Appellant's Br. at 5.

In response, the Government offers the content of the plea agreement. The agreement states, in relevant part:

> The U.S. Attorney's Office will decide whether to file a motion for reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure. The defendant fully understands that such a motion may be made pursuant to law if, and only if, the Defendant fully cooperates with the Government and *materially and substantially assists the Government in the investigation or prosecution of others*. The determination of whether the Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office. *The Defendant fully understands that this paragraph is not a promise by the Government to file such a motion*.

Appellee's Br. at 7 (quoting Conley Plea Agreement JA 67) (emphasis added in brief).

The Government then offers its statement at Conley's sentencing hearing as an explanation for its failure to request the downward departure.

> Your Honor, Mr. Hettinger made reference to Mr. Conley's cooperation. I don't want this Court to go forward without mentioning that Mr. Conley, as part of his plea agreement, committed to cooperation with the government. And he did, in fact, meet on at least two occasions with Special Agent Schichtel and Postal Inspector Locke and proffered information. I think [the lack of a § 5K1.1 downward departure motion] is a function of two things. First of all, Mr. Conley, being one of the last individuals to come in and speak to the government, is in a position of providing information that had been shared by everyone else and was not in a position to do anything on his own behalf. [Second] [h]e attempted to provide information regarding other offenses, but that information was vague and much of it was just not of substantial assistance in the investigation or prosecution of others.

Appellee's Br. at 8 (quoting Conley Sentencing Tr. 17-18, JA 215-16). The Government points out that seven co-conspirators cooperated before Conley was even arrested.

The Government also states that Conley failed to raise this issue below, although Conley complained that he had given information pertaining to the investigation and was "punished" with a motion for an upward departure rather than rewarded with a downward departure. Conley never raised a claim of prosecutorial misconduct below, nor did he file a motion to compel the filing of a § 5K1.1 departure motion. However, the Government acknowledges that Conley's assistance was discussed during the sentencing.

This circuit will review a claim for prosecutorial misconduct based on the Government's failure to enter a § 5K1.1 motion for a downward departure only if there is a claim of an unconstitutional motivation. *United States v. Benjamin*, 138 F.3d 1069, 1073 (6th Cir. 1998) (citing *Wade v. United States*, 504 U.S. 181, 185-86 (1992) ("We hold that federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive.")). A claim based on bad faith is not reviewable. *See United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000).

Because Conley failed to raise this issue below, and he has alleged no unconstitutional motivation in this instance,[2] his prosecutorial misconduct claim is not reviewable by this court.

### III. CONCLUSION

For all of the aforementioned reasons, the sentences imposed by the district court are AFFIRMED.

---

[2]Conley claims that the Government left him "out in the cold" when it failed to enter the motion for a downward departure, a claim that can be interpreted, at best, as a bad faith claim.  JA at 4.