**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0355n.06
Filed: May 25, 2007

**No. 06-1070**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| *Plaintiff-Appellee*, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | **O P I N I O N** |
| **CHARLES J. MITCHELL**, | | |
| | | |
| *Defendant-Appellant*. | | |

**BEFORE:** **COLE, CLAY, and GILMAN, Circuit Judges**.

**R. GUY COLE, JR., Circuit Judge**. Charles Jelmal Mitchell pleaded guilty to being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1), and was sentenced to fifty-one months of imprisonment. On appeal, Mitchell challenges the reasonableness of his sentence and the district court's imposition of a four-level enhancement, under U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2K2.1(b)(5), for possessing a firearm in connection with another felony offense. For the following reasons, we **AFFIRM** the district court's application of the § 2K2.1(b)(5) enhancement to increase Mitchell's offense level, but **VACATE** the defendant's sentence and **REMAND** for resentencing.

**I. BACKGROUND**

In February 2003, the Metropolitan Enforcement Team ("MET"), a multi-jurisdictional drug

task force in Kent County, Michigan, received information regarding an unusual amount of traffic around 1095 Stokes Street NE, Grand Rapids, Michigan.  Believing that the traffic around the house could be drug related, on March 6, 2003, a Michigan police trooper conducted a "trash pull" at the residence.  The officer discovered (1) "stems and seeds of a green and brown material that tested positive for marijuana"; (2) eleven plastic sandwich bags "with the bottoms cut off" which, based on his training and experience, the officer believed were used to package "dime bags of marijuana for sale"; and (3) paperwork addressed to Shelly Hall, 1095 Stokes Street NE.  (Joint Appendix ("JA") 115.)  The officer returned for a second trash pull and this time found paperwork addressed to both Shelly Hall and Charles Mitchell at 1095 Stokes Street NE.

On March 14, 2003, MET officers and officers from the Grand Rapids Police Department's Special Response Team executed a search warrant at the residence.  During a search of Mitchell's bedroom, the officers found (1) one thirty-six-inch-tall marijuana plant in the bedroom closet; (2) an unloaded Rossi .44 caliber handgun, with an obliterated serial number, in the pocket of a coat found in the closet; (3) marijuana stems inside a shoe box under the bed; (4) marijuana seeds and small individual packages of marijuana inside a shoe box under the bed; (5) individually filled plastic bags of marijuana, empty plastic bags, a Pringles-potato-chip container with smoked marijuana cigarettes inside, and a shoe box containing a pair of scissors under the bed; and (6) paperwork addressed to Mitchell at 1095 Stokes Street NE.  (*Id.*116.)

Mitchell admitted to living in the house since 2001 with his girlfriend, Shelly Hall; Hall's brother, Jason Hall; and Jason's girlfriend, Heather Essenmacher.  Mitchell told police that he smoked marijuana, but that he "commonly purchased it in the neighborhood," and that he had only

two ounces for personal use. Although Mitchell admitted that the marijuana plant, the shoe boxes full of marijuana and plastic bags, and the handgun were his, he denied selling drugs and claimed that the marijuana was for personal use. Mitchell also admitted that he had facilitated purchases of marijuana for friends by introducing them to Jason and to Brandon Dietrich, who were the ones bringing pounds of marijuana to the house. Mitchell claimed that he purchased the gun, found in his closet, two weeks earlier for protection because "people had been looking in his windows." (*Id.* 116.) The total weight of marijuana found inside the house was 230.617 grams, of which 100 grams was attributable to the marijuana plant.

Mitchell pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mitchell was first sentenced in 2004 to fifty-one months of imprisonment—a sentence at the bottom of the fifty-one to sixty-three months advisory Guidelines range. The court determined that Mitchell's offense level was twenty-three and his criminal history category was II. Mitchell's offense level included a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) because Mitchell possessed a firearm in connection with another felony, i.e., distribution of narcotics. In addition, a two-level enhancement under U.S.S.G. § 2K2.1(b)(4) was added because the firearm had an obliterated serial number. Mitchell objected to the court's imposition of the four-level enhancement.

Mitchell appealed his sentence to this Court, and we vacated the sentence and remanded for resentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). At his second sentencing hearing, Mitchell renewed his objection to the district court's imposition of the four-level enhancement under § 2K2.1(b)(5), arguing that the facts necessary to apply the enhancement were found by the district court judge under a preponderance-of-the-evidence

standard rather than the beyond-a-reasonable-doubt standard required by *Booker*. The district court concluded that Mitchell had waived his objection to the court's application of the enhancement because he had not raised it on appeal. Alternatively, the court concluded that the factual findings necessary to apply the four-level enhancement had to be found by a preponderance of the evidence, and not, as Mitchell argued, beyond a reasonable doubt. The court determined that the facts in Mitchell's case did support an enhancement under § 2K2.1(b)(5).

The court calculated the same Guidelines range—fifty-one to sixty-three months of imprisonment—that applied at Mitchell's first sentencing hearing. Mitchell asked the court to consider "his age and the age at which he committed his prior predicate felony offense" in determining whether to apply a sentence below the advisory range. (JA 105-06.) The court found Mitchell's argument for a lower sentence unpersuasive and Mitchell was again sentenced to fifty-one months of imprisonment and three years of supervised release.

Mitchell filed this timely appeal. We have jurisdiction over Mitchell's appeal under 28 U.S.C. §1291 because Mitchell is appealing from a final judgment of the district court.

## II. ANALYSIS

### A. Standard of Review

Mitchell's challenge to the constitutionality of the district court's use of a preponderance-of-the-evidence standard in making its factual findings presents a question of law that we review de novo. *United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004). In reviewing a district court's sentencing decisions, the standard of review is governed by statute:

The court of appeals shall give due regard to the opportunity of the district court to

judge the credibility of the witnesses, and shall accept the findings of fact of the
district court unless they are clearly erroneous and . . . shall give due deference to the
district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e). We "will disturb the [district court's] underlying factual findings only if they

are clearly erroneous." *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001) (quoting *United

States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996)). "Once we conclude that the district court has

properly consulted the Sentencing Guidelines, . . . the sentence [is reviewed] for reasonableness."

*United States v. Gibson*, 409 F.3d 325, 338-39 (6th Cir. 2005).

**B. Application of the § 2K2.1(b)(5) Enhancement**

Mitchell argues that his due-process rights were violated when the district court found the

facts necessary to apply the four-level enhancement under § 2K2.1(b)(5) by a preponderance of the

evidence rather than beyond a reasonable doubt. (Appellant's Br. 12-17.) Alternatively, Mitchell

argues that, even under the preponderance-of-the-evidence standard, the evidence before the

sentencing judge was insufficient to support application of the four-level enhancement. (*Id.* 17-18.)

1.    Mitchell waived his objection to the district court's application of the
      § 2K2.1(b)(5) enhancement

Mitchell objected to the imposition of the four-level enhancement at the first sentencing

hearing. Specifically, Mitchell objected to the presentence report's recommendation that the drugs

found in his possession were for sale or distribution. The district court, however, denied the

objection, concluding that the large quantity of marijuana, plus the fact that it was packaged for sale,

indicated that Mitchell was intending to sell it. Mitchell appealed his sentence and we remanded for

resentencing in light of *Booker*.[1]

Our remand order did not state whether Mitchell challenged his sentence for reasons apart from his *Booker* objections. Mitchell, however, does not challenge the government's argument that he did not raise his objection to the enhancement in his prior appeal. Rather, Mitchell argues that on remand, a trial court can "revisit and correct guidelines issues, even if they were not raised on appeal" because *Booker* remands are general remands, where the district court is free to recalculate the applicable Guidelines range. (Appellant's Reply Br. 6.) He contends that his objection to the district court's use of the enhancement was not waived because in a general remand the Guidelines range is recalculated by the district court and therefore his objection can be made anew.

Mitchell's argument is incorrect. Mitchell could have raised his objection to the district court's application of the § 2K2.1(b)(5) enhancement along with his *Booker* claim in his first appeal, giving us the opportunity to dispose of the issue, and thereby foreclosing any further appeals based on that issue. *See United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000) (explaining that

---

[1]Our remand order comprised two paragraphs and stated the following:

> The defendant appeals the judgment of sentence entered on April 28, 2004, on his guilty plea to possession of a firearm by a felon. His opening brief in this court challenges the sentence pursuant to *Blakely v. Washington*. The government and the defendant now jointly move to remand this matter for resentencing in light of *United States v. Booker*.

> Upon review, the motion is GRANTED, and the judgment of sentence is VACATED. This matter is REMANDED to the district court for further proceedings in light of *Booker*.

(JA 42 (citations omitted).)

"when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeal[]"); *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) ("A party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter."). Because Mitchell did not object to the district court's application of the enhancement under § 2K2.1(b)(5) in his prior appeal, Mitchell is foreclosed from raising the objection now.

Further, we need not decide whether our remand order in Mitchell's first appeal was a limited or general remand because the issue is not dispositive in this case. Even if we were to conclude that a remand for resentencing in light of *Booker* was a general remand, as Mitchell argues, Mitchell still waived his objection to the four-level enhancement because, even under a general remand, a party cannot raise claims it could have raised in a prior appellate proceeding. This was made clear in *McKinley*: "While the district court may entertain any issues it feels are relevant to the overall sentencing decision (following a general remand), this does not give the parties license to re-assert issues that they should have raised during an earlier appeal." 227 F.3d at 718. Accordingly, Mitchell waived his objection to the district court's application of the § 2K2.1(b)(5) enhancement.

   2.   The district court properly applied the § 2K2.1(b)(5) enhancement

Even if Mitchell had not waived his objection to the imposition of the enhancement, Mitchell's argument still fails because (1) the district court did not err in using a preponderance-of-the-evidence standard to find the facts necessary to support the enhancement under § 2K2.1(b)(5), and (2) the facts support the district court's use of the enhancement.

First, so long as the sentence does not exceed the statutory maximum, the district court can

find facts to enhance a defendant's sentence by a preponderance of the evidence. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) (concluding that "judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate [the defendant's] Fifth Amendment due process rights"); *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000) (holding that *Apprendi v. New Jersey*, 530 U.S. 466, 542 (2000), allows judicial fact-finding by a preponderance of the evidence if the sentence does not exceed the statutory maximum).

Second, the district court was correct that a preponderance of the evidence supports imposition of the enhancement. A felon convicted under 18 U.S.C. § 922(g)(1) for being in possession of a firearm can receive a four-level enhancement to his offense level if "the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5) (2003). To justify an enhancement under § 2K2.1(b)(5), the government must establish that there was more than just a coincidental nexus between the firearm and the other felony offense. *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006). The government has the burden of establishing "by a preponderance of the evidence that the defendant possessed or used a gun in connection with another felony." *United States v. Hardin*, 248 F.3d 489, 495 (6th Cir. 2001). We have recognized that "proof that narcotics and firearms were present in the same residence, or even in the same room" does not automatically "support the application of the 2K2.1(b)(5) enhancement." *Id.* at 495-96.

The fortress theory[2] applies "where a defendant has used a firearm to protect the drugs, facilitate a drug transaction, or embolden himself while participating in felonious conduct." *Huffman*, 461 F.3d at 788. Under the fortress theory, "a sufficient connection is established [between the firearm and the felonious conduct] if it reasonably appears that the firearms found . . . are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Clay*, 346 F.3d 173, 179 (6th Cir. 2003) (quoting *Ennenga*, 263 F.3d at 503 (internal quotation marks omitted)).

In *Hardin*, for instance, we concluded that the § 2K2.1(b)(5) enhancement applied because cocaine was found in Hardin's room and a gun was found in the same room on his night stand. 248 F.3d at 492. We explained that Hardin's argument, that the gun was used to protect his wife, did not negate application of the enhancement: "It is possible that the gun was used both to protect his wife and to further his drug business." *Id.* at 498. We noted that application of the enhancement could be supported by the fortress theory:

> The defendant, an admitted distributor of drugs in small amounts, kept his stash of cocaine and his 9MM gun in the bedroom; and the gun was right next to the bed, for easy access. Granted that there was no evidence that Defendant sold cocaine from the bedroom; however, it cannot be denied that the bedroom was the stash location for the cocaine, and that a readily accessible firearm was there if needed to protect the cocaine.

---

[2]We adopted the fortress theory to determine whether a firearm can be said to facilitate an offense and justify an enhancement under § 2K2.1(b)(5). *See United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989) (explaining that "courts have developed a 'fortress analogy' theory, which holds that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime") (quoting *United States v. Matra*, 841 F.2d 837, 843 (8th Cir. 1988)).

*Id.* at 500.  Ultimately, we concluded that "[t]he fact that the firearm was found in the same room where the cocaine was stored can lead to the justifiable conclusion that the gun was used in connection with the felony."  *Id.* at 498-99.  Additionally, in *Ennenga*, we explained that "[w]hen one is in possession of a large and valuable stash of drugs, the desire to protect these illicit substances can be compelling."  263 F.3d at 504.

In concluding that an enhancement under § 2K2.1(b)(5) to Mitchell's offense level was appropriate, the district court was persuaded that the drug quantity at issue (calculated by the district court to be approximately six ounces) "constitute[s] drug trafficking."  (JA 104.)  According to the court, the quantity in Mitchell's possession was sufficiently large to "indicate[] an intent to distribute."  (*Id.*)  The district court was also persuaded that sandwich bags (which the court noted were "commonly used to package marijuana") in close proximity to the marijuana also indicated an intent to distribute.  (*Id.* 104-05.)  Specifically, the court stated that "[o]ne wonders why would marijuana be packaged?  The answer is in order to distribute it."  (*Id.* 105.)

Here, Mitchell was found in possession of a significant quantity of marijuana, which the district court noted had an approximate street value of "several hundred dollars."  (*Id.* 103.)  Like the situation in *Hardin*, Mitchell's gun was found in the same room as the marijuana and next to the marijuana plant.  Additionally, the marijuana and the gun were both found in Mitchell's bedroom and Mitchell himself admitted to facilitating drug purchases for his friends. Thus, the district court could have reasonably concluded that Mitchell's bedroom was where his drugs were sold and that the gun was there for protection.  *See Hardin*, 248 F.3d at 499 (stating that firearms "are 'tools of the trade' in drug transactions").  Further, Mitchell's admission that the gun was for protection, like

the defendant's admission in *Hardin*, is not dispositive because, as we explained in *Hardin*, the gun could be used for multiple purposes, including to further the sale of drugs.

Although Mitchell waived his challenge to the district court's application of the § 2K2.1(b)(5) enhancement, Mitchell's arguments fail on the merits. The district court did not apply the wrong standard in finding the facts necessary to support the enhancement and further, a preponderance of the evidence supports application of the § 2K2.1(b)(5) enhancement to Mitchell's offense level.

## C. Procedural and Substantive Reasonableness

*Booker* requires us to review a defendant's sentence for reasonableness. *See United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006). In determining whether a sentence is reasonable, we look to whether "the district court's sentence is a reasonable application of Section 3553(a)." *Id.* A sentence that is within the Guidelines range is presumptively reasonable. *Id. But cf. United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (stating that a sentence "outside of the Guidelines range – either higher or lower – is [not] presumptively unreasonable") (emphasis omitted) (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)). Because Mitchell's sentence of fifty-one months' imprisonment is within the Guidelines range, it carries a presumption of reasonableness. "This presumption is rebutted, however, when there is an 'absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors.'" *Davis*, 458 F.3d at 510 (quoting *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006)).

When the district court selects a sentence that deviates (upwards or downwards) from the advisory Guidelines range, we apply "proportionality review: 'the farther the judge's sentence

departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a)' must be." *United States v. William J. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). Lastly, "we may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

In *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006), we explained that merely sentencing a defendant to a term of imprisonment that falls within the Guidelines range does not relieve the district court of its responsibility to explain its reasons for imposing a sentence. The district court has an "obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence." *Id.* "Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Id.* In *Richardson*, we concluded that the sentence imposed was reasonable because "[t]he sentencing hearing transcript reveal[ed] that the district court articulated and explained its reasons for sentencing Richardson . . . ." *Id.* We were convinced that ""[t]he [district] court did not 'simply select' what it viewed as 'an appropriate sentence.'" *Id.* (quoting *Webb*, 403 F.3d at 383).

In *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005), we held that a defendant is entitled to resentencing if the district court merely provides a list of the defendant's various characteristics that it considered during sentencing "without any accompanying analysis." The Court

in *Jackson* held that merely providing a list was "insufficient to justify the sentence imposed, as it renders our reasonableness review impossible." *Id.* "In our view, *Booker* requires an acknowledgment of the defendant's applicable Guidelines range as well as a discussion of the reasonableness of a variation from that range." *Id.* We stated that "we as an appellate court must still have the articulation of the reasons the district court reached the sentence ultimately imposed." *Id.; accord United States v. Williams*, 432 F.3d 621, 622 (6th Cir. 2005) ("In order for an appellate court to effectively review the reasonableness of the sentence, there must be an adequate explanation of the district court's reasons for imposing the sentence.").

Here, the district court gave the following rationale for its imposition of a fifty-one month sentence:

> [C]onsidering the calculated guideline range, as well as the factors in Title 18, Section 3553(a) . . . and particularly taking into account the proper concerns of the defendant . . . , noting defendant is a young offender; has learning disabilities; it is claimed had a prior felony conviction when he was 17 years of age; was immature at that time, and that retribution and deterrence lose some of their force when applied to such persons; that the gun was unloaded, and that the defendant had it for personal protection, although it seems to me that those two things are somewhat at odds with each other . . . .

> [I]t's noted further that the defendant committed this offense, and then found and held a job. Finally, that the unrelated drug charges pending against him in Grand Rapids were, in fact, dismissed . . . .

> But thinking about all of these things, and trying to ascertain a reasonable sentence for the defendant, specifically whether it's necessary to vary from the guideline range in order to find a reasonable sentence, it is my view that there is first no reason to, in fact, depart from the calculated guideline range, for reasons stated within the guidelines manual.

> Further, and finally, I find that there's no persuasive reason to vary from the guideline range for, among other things, reasons of personal characteristics under [§]

3553 as particularly expressed in the conclusion of the defendant's sentencing memorandum. And I intend to impose a sentence that is equivalent to that originally imposed, specifically 51 months.

(JA 106-07.)

Mitchell urged the district court to deviate downward from the Guidelines range based on his age at the time he committed the crime, twenty-two, and his age at the time of his prior felony offense, seventeen. The court did not explain why it was rejecting Mitchell's argument for a sentence below the Guidelines range; its only explanation was that it found "no persuasive reason" to depart. (*Id.* at 107.)

Here, the district court did little more than list Mitchell's characteristics, such as his age and learning disability, which could have justified a downward variance under § 3553(a), but failed to explain why these characteristics did not justify a below-Guidelines sentence. In essence, the district court did what we admonished in *Jackson* and *Richardson*: the court listed Mitchell's characteristics without any accompanying rationale for imposing the fifty-one month sentence. Simply stating that there is "no persuasive reason" to depart from the Guidelines range is insufficient under *Richardson* and *Jackson*. *See Richardson*, 437 F.3d at 554 (explaining that the district court must "communicate clearly its rationale for imposing the specific sentence"); *Jackson*, 408 F.3d at 305 (stating that merely providing a list of defendant's characteristics, "without any accompanying analysis, is insufficient"). Instead, we require some demonstration that the court analyzed the § 3553(a) factors in relation to this particular defendant and some evidence of a descriptive link between the defendant and the sentence imposed. A bare reference to the Guidelines or to a sentencing memorandum, without some explanation of their significance or relevance in this particular case, will not suffice.

We recognize that this is a very close case. Little more would be needed to satisfy our requirements for procedural reasonableness. For the reasons stated above, however, we conclude that the district court fell just short of complying with our controlling precedents. Accordingly, we remand this case to the district court for resentencing. In particular, the district court should provide its rationale for why a sentence of fifty-one months of imprisonment is appropriate based on the § 3553(a) factors.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's use of the § 2K2.1(b)(5) enhancement but **VACATE** Mitchell's sentence and **REMAND** Mitchell's case for resentencing consistent with this opinion.