**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Angelica I. TUPPER, Defendant–
Appellant.**

**No. 15–5339.**

United States Court of Appeals,
Sixth Circuit.

March 25, 2016.

BEFORE: GUY, BATCHELDER, and COOK, Circuit Judges.

PER CURIAM.

Angelica I. Tupper appeals her 210–month sentence for methamphetamine offenses. We affirm.

Tupper pleaded guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846, and possession with intent to distribute and distribution of 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). In objections to the presentence report, the government asserted in relevant part that Tupper should receive a four-level enhancement for her aggravating role as an organizer or leader pursuant to U.S.S.G. § 3B1.1(a). The probation office agreed with the government and revised the presentence report to include the enhancement. At sentencing, after hearing testimony from FBI Special Agent Craig Eid, the lead investigator, and recordings of telephone conversations, the district court overruled Tupper's objection to the enhancement. The district court calculated a guidelines range of 210 to 262 months of imprisonment based on a total offense level of 37 and a criminal history category of I and, after considering the sentencing factors under 18 U.S.C. § 3553(a), sentenced Tupper at the bottom of that range to 210 months of imprisonment.

On appeal, Tupper contends that the district court erred in imposing the four-level aggravating role enhancement. U.S.S.G. § 3B1.1(a) calls for a four-level increase in a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." We review the district court's factual findings underlying the enhancement for clear error and defer to the district court's legal conclusion that a person was an organizer or leader under U.S.S.G. § 3B1.1(a). *United States v. Washington,* 715 F.3d 975, 982–83 (6th Cir.2013).

In determining whether the enhancement applies, courts consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1,

comment. (n.4). It is not necessary for a defendant to satisfy each of these factors for the enhancement to apply. *See United States v. Gates*, 461 F.3d 703, 709 (6th Cir.2006).

Tupper, a resident of Las Vegas, Nevada, transported several pounds of methamphetamine to Louisville, Kentucky. Special Agent Eid testified as background that the FBI and the Louisville Metro Police Department were investigating a drug trafficking organization and determined that John White was the organization's main methamphetamine supplier. After his arrest, White cooperated and told law enforcement about his dealings with Tupper, one of his methamphetamine suppliers. White met Tupper in November 2012 when he ordered three pounds of methamphetamine and one kilogram of cocaine from someone known as "Junior." Tupper delivered the drugs to White's shop in Louisville. From that point on, White dealt directly with Tupper, who supplied him with methamphetamine on multiple occasions over the next year.

On one occasion in early July 2013, Tupper delivered three pounds of methamphetamine to White in exchange for $20,000 in cash. Later that day, law enforcement stopped the vehicle in which Tupper and her brother, Nevarez Estrada Gildardo, were travelling. After a K–9 unit alerted to the presence of drugs, law enforcement searched the vehicle and discovered $20,000 in cash in a bag with coffee grounds and a ledger containing deposits, withdrawals, and expenses along with a recipe for converting methamphetamine from liquid to solid form.

In cooperating with law enforcement, White recorded telephone conversations with Tupper about an upcoming delivery. During those conversations, Tupper repeatedly assured White that she could arrange to supply the quantity of methamphetamine that he wanted, but was less optimistic that she could deliver cocaine. Tupper rejected White's suggestion that the methamphetamine be delivered all at once and explained that the drugs would be delivered in batches, stating that, "if something happens, it's better a little bit than all of it.... It's a precaution only." Tupper advised White that her "friend" would be bringing the methamphetamine and told him, "I want her to know you because she's going to be seeing a lot of you." Tupper expressed reluctance about being in the same vehicle as the methamphetamine, telling White, "I won't drive with it either. I'm paying her to do that...."

Tupper's "friend" turned out to be Angela Gunter of Indianapolis, Indiana, whom Tupper met at the pub where Gunter worked. Gunter collected cash from people on Tupper's behalf, receiving payments ranging from $1,500 to $4,000 from twelve to fifteen different people and depositing them into a bank account for Tupper.

The methamphetamine delivery that was the subject of the recorded telephone conversations was to take place in early December 2013. Two packages were shipped from California to an address in Indianapolis; Tupper provided White with the tracking number for one of those packages. Law enforcement conducted surveillance on the Indianapolis address and saw Deanna Walker, Gunter's friend, pick up the tracked package. Gunter, Walker, and an unidentified female later drove to the Louisville hotel where Tupper was staying and left after a few minutes. Law enforcement then stopped the vehicle and, after Gunter consented to a search, found two packages wrapped like presents containing six pounds of methamphetamine. Gunter told law enforcement that she was to be

paid $2,000 for delivering the packages for Tupper.

The evidence presented by the government supports the district court's conclusion that Tupper was an organizer or leader of a criminal activity involving five or more participants under U.S.S.G. § 3B1.1(a). The criminal activity involved, at a minimum, Tupper, White, "Junior," Gildardo, Gunter, and Walker. Tupper arranged the shipment and delivery of large amounts of methamphetamine from across the country on multiple occasions, exercised decision making authority over how the methamphetamine would be delivered, and recruited Gunter to insulate herself from criminal exposure. *See United States v. Schultz,* 14 F.3d 1093, 1099 (6th Cir.1994) ("Organizing and coordinating an interstate ... scheme of distribution that brings contraband into a community for distribution on a continuing basis should be sufficient to qualify a single individual as an 'organizer' of criminal activity."). Tupper argues that recruitment of one person to act as a courier is insufficient to apply the four-level enhancement under U.S.S.G. § 3B1.1(a). Tupper's argument ignores her other organizational activities. Furthermore, a defendant need lead only one other participant to qualify for the enhancement. *See* U.S.S.G. § 3B1.1, comment. (n.2); *Washington,* 715 F.3d at 983. Tupper also contends that the district court failed to consider the likelihood that there were people "upstream" who were higher in the drug trafficking organization. But "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, comment. (n.4); *see Washington,* 715 F.3d at 984. We defer to the district court's conclusion that Tupper was an organizer or leader of this conspiracy.

Accordingly, we **AFFIRM** Tupper's sentence.