NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0511n.06

No. 23-3012

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 11, 2023
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

ANTONIO M. COOK,

 Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: BOGGS, SUHRHEINRICH, and READLER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendant Antonio Cook has led a life filled with crime. Despite this, the district court gave him a below-Guidelines sentence for two separate felon-in-possession offenses. He now argues that his sentence is procedurally and substantively unreasonable. It is not. We affirm.

**I.**

On September 8, 2020, Akron police stopped Cook for a traffic violation. They arrested him because he had an open container of alcohol on the driver's seat. When they searched Cook's vehicle, they found a .40-caliber Glock pistol, loaded with a high-capacity magazine, under Cook's seat, and an AR-15 style semiautomatic rifle, also loaded with a high-capacity 30-round drum magazine, on the back seat. Cook was prohibited from having these items because he had prior convictions for robbery and trafficking in and possession of cocaine. The officers also found 7.9 grams of fentanyl tucked behind the car radio.

Cook was charged in state court with having weapons while under a disability and possessing fentanyl and released on bond.

On December 29, 2020, an intoxicated Cook stumbled into an Akron hospital and pulled a Springfield Armory .40-caliber pistol out of his pocket. Police arrested him and searched him. They found 11 grams of methamphetamine, 0.30 grams of crack cocaine, 60 Xanax pills, 4 Adderall pills, $1,058, and $9,500 in counterfeit currency. Cook told the officers that his girlfriend owned the gun. He also reported that he used Xanax, methamphetamine, and "yellow pills" for stress.

A federal indictment followed, charging Cook with being a felon in possession of firearms on September 8, 2020 (Count One) and December 29, 2020 (Count Two). Cook pleaded guilty without a plea agreement to both charges. The state charges were dropped as a result.

Cook's presentence report (PSR) set his base offense level at 22 under U.S.S.G. § 2K2.1(a)(3), added two levels pursuant to § 2K2.1(b)(1)(A) because Cook possessed between three and seven firearms and added another four levels under U.S.S.G. § K2.1(b)(6)(B) because Cook possessed two of the firearms in connection with drug trafficking.

At sentencing, the court asked why, in cases involving firearms and drug trafficking, the government sometimes brought drug charges and sometimes relied on a sentencing enhancement. The court noted that the state had charged Cook with drug trafficking along with the gun charge for the September 8 incident. The government explained that the United States Attorney's Office did not have a "policy or directive to rely on [the] sentencing phase" to establish drug quantities and that it depended on what "the evidence would support." In Cook's case, the government worried that it couldn't prove the knowledge element for a drug-trafficking count because Cook denied knowledge of the fentanyl when he was arrested. But Cook later admitted to possessing

the weapons and drugs while accepting responsibility for his crimes. The probation officer stated that the evidence showed that Cook "was trafficking at least in fentanyl" because he never used fentanyl and was carrying a large amount of cash.

Having been enlightened by the government about its practice in making charging decisions in drug cases and by the probation officer's input, the court concluded that the four-level enhancement should be applied based on the amount of fentanyl, Cook's admission that he didn't use it (but did use other drugs), and the large quantities of unexplained cash. The court then reduced the offense level by three for acceptance of responsibility. This made Cook's total offense level 25. The PSR mapped out Cook's extensive criminal history, beginning at age 13 with assault and theft and moving on to numerous drug-trafficking and other violent offenses. This history led to a score of 19 and placed him in criminal history category VI. The advisory Guidelines range was 110–120 months.

The court also addressed Cook's five pending supervised-release violations from an earlier conviction. Cook admitted to the five violations. The advisory Guidelines range for those violations was 24 months after an adjustment to limit the sentence to the statutory maximum.

The defense asked for a "light sentence" or variance, stressing Cook's difficult upbringing. The government requested a high-end sentence because Cook had been committing crimes "since the age of 13 with essentially no break." Cook was 37 years old at sentencing, and none of his prior sentences had had any impact on his criminal behavior.

After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a 90-month sentence for the two firearms offenses, which was lower than the Guidelines range, to run concurrently with the 24-month sentence for the supervised-release violations, and consecutive to

the six-year state sentence that Cook was already serving. (*Id.* at 194–95). Cook did not object to the sentence.

He appeals.

**II.**

*Procedural Reasonableness.* First, Cook argues that his Fifth Amendment due process rights were violated because his sentence was enhanced by alleged-but-not-proven-beyond-a-reasonable-doubt drug trafficking conduct. We rejected this argument many years ago in *United States v. Gates*, 461 F.3d 703, 707–08 (6th Cir. 2006); *see also United States v. Coffee,* 434 F.3d 887, 898 (6th Cir. 2006); *United States v. Wright*, 464 F. App'x 475, 483 (6th Cir. 2012).

Cook does not otherwise seriously dispute that the enhancement was proper. With good reason. When Cook was arrested on September 8, 2020, he had a distribution quantity of fentanyl in the vehicle, along with two firearms both loaded with high-capacity magazines and within easy reach. Further, Cook acknowledged that his passenger brought the gun because he was "into some shit," which certainly suggested the individuals needed protection for criminal activity. Accordingly, the evidence established by a preponderance that the weapons, which were in "close proximity to drugs," were possessed "in connection with another felony offense," because they "had the potential of facilitating[] another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) & cmt. n.14(A), 14(B).

The foregoing proof, which the district court carefully considered, easily supports the court's conclusion that, for sentencing-enhancement purposes, Cook possessed the two firearms on September 8, 2020 in connection with drug trafficking. The court satisfied itself that Cook was engaging in drug trafficking because Cook "indicat[ed] that he didn't use fentanyl" and also had a large amount of unexplained cash on hand. *See, e.g.*, *United States v. Mooningham*, 762 F. App'x

313, 314–15 (6th Cir. 2019) (holding that a § 2K2.1(b)(6)(B) enhancement was proper where evidence showed that the defendant, a convicted felon, had a loaded pistol in the center console of the car he was driving, distribution quantities of drugs in the passenger seat, and $1,480 cash on his person). And because the four-level enhancement for possessing firearms in connection with another felony was proper, Cook's complaint that the district court "could have ensured both procedural and substantive due process . . . by reducing the criminal offense level to the appropriate 19" is without merit. *See* U.S.S.G. § 2K2.1(a)(3) (stating that "if (A) the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine; . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance" the base offense level is 22).

Because the district court properly calculated the guidelines range, selected the sentence based on facts that were not clearly erroneous, and adequately explained its sentence, Cook's sentence was not procedurally unreasonable. *See United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

*Substantive Reasonableness.* Cook argues that the district court imposed a sentence greater than necessary to punish him and protect the public. *See* 18 U.S.C. § 3553(a); *Rayyan*, 885 F.3d at 442. The record says otherwise. Before deciding that 90 months' incarceration was "sufficient but not greater than necessary" to comply with the purposes of § 3553, the district court carefully considered the relevant factors—focusing on the nature and circumstances of the offense, Cook's history and characteristics, and the need for deterrence and protecting the public. First, the court noted that Cook was "not just carrying guns," but guns with high-capacity magazines, which Cook said were needed for protection. (*Id.*) And he possessed a firearm on December 29 while on bond for the September 8 possession. (*Id.*) Second, the court considered Cook's "very difficult

upbringing" without a support system (Cook lacked a father figure, his mother had health issues, and his mother and brother were incarcerated) and acknowledged that it played some role in his criminal behavior. But the court found that Cook was also accountable and that he needed mental-health and substance-abuse treatment. Third, the court noted the six-year state sentence Cook was already serving and then asked, "what is the additional amount—what should you be serving because you got these other cases?" The court decided on 90 months' imprisonment, which was below the guideline range. (*Id.*) The court recognized that it was a long sentence for "a very young man" but that Cook's criminal history (CHC VI) established that prior punishments didn't serve as any deterrent and that his sentence had to be "stiff." The court emphasized its conclusion, pointing to Cook's "incredible record for a person [his] age," and the importance of some "reckoning" so that Cook can begin to address his problems. At the same time, the court varied downward because it wanted Cook to "have some life . . . outside of prison."

In short, based on Cook's "incredible" criminal history, his sentence was most certainly not longer than necessary to punish him and protect the public. *See Rayyan*, 885 F.3d at 442. The record demonstrates that the court considered the totality of the circumstances and did not abuse its discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Finally, Cook asserts that the district court should have exercised its discretion per *Kimbrough v. United States*, 552 U.S. 85 (2007) to register its discontent with "the disparity between the charging instrument and the proposed criminal offense level." The Supreme Court allows district courts to depart from a Guidelines range based on a general policy disagreement with a Guideline "even in a mine-run case." *See Kimbrough*, 552 U.S. at 109–10. But the district court here did not express disagreement with § 2K2.1(b)(6)(B)—it simply wanted to know why the government charged drug trafficking in some cases and relied on a sentencing enhancement in

others, which was germane because the state court had charged Cook with drug trafficking. Once satisfied with the government's explanation and that the evidence preponderated for the enhancement, the court properly added the four points to Cook's offense level.

**AFFIRMED**.