NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0473n.06

Case No. 14-3654

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jun 25, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JONATHAN WEBSTER, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. After Jonathan Webster pleaded guilty to stealing hundreds of individuals' identities with false offers of lending a helping hand, the district court imposed an eleven-year sentence. On appeal, Webster claims that the district court misapplied two enhancements to his advisory sentencing range: one for lying about representing a charity, the other for targeting vulnerable victims. We affirm.

To trick people into sharing their personal information, Jonathan Webster created websites for fake charities with reassuring, vaguely religious names such as "The Angel Charity" and "4 the Glory Charity." PSR at 6. Webster invited those in need to apply for financial aid and publicized the nonexistent charities in *Job News*, a nationwide newsletter catering to unemployed and recently employed individuals. Over three years, more than 250 people trusted

Webster with their names and Social Security numbers, which he used to file false tax returns and steal nearly $1.5 million in tax refunds from the government. Webster spent most of that money on shoring up his struggling Columbus bar. Neither effort worked. The bar failed. And the tax-refund scheme unraveled in 2013. Webster pleaded guilty to wire fraud and aggravated identity theft. *See* 18 U.S.C. §§ 1028A, 1343.

The district court applied two sentencing enhancements to the wire fraud conviction pertinent to this appeal: a two-level increase for misrepresenting that he worked "on behalf of a charitable . . . organization," U.S.S.G. § 2B1.1(b)(9)(A), and a two-level increase for preying on "vulnerable victim[s]," § 3A1.1(b)(1). These yielded a 108-to-135-month advisory guidelines range for the wire fraud. Aggravated identity theft has no offense level or guidelines range and carries a mandatory twenty-four-month consecutive prison term. *See* 18 U.S.C. § 1028A(a)(1), (b)(2); U.S.S.G. § 2B1.6. All in all, the court imposed a 132-month sentence. Webster challenges each enhancement.

*The charity enhancement.* The parties skirmish over whether we may review the charity enhancement. The government claims that Webster *waived* any objection to this enhancement by "agree[ing]" to it and "recommend[ing]" it in his plea agreement, R. 2 at 6, and consenting to it during the sentencing hearing. Waived claims are unreviewable claims. *See United States v. Olano*, 507 U.S. 725, 733 (1993). Webster claims that he did not waive this argument but merely *forfeited* it by failing to raise the point at his sentencing hearing. Forfeited claims are reviewed for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). We need not resolve the debate. Even if Webster only forfeited his objection to the enhancement, no plain error occurred.

The charity-enhancement guideline calls for a two-level enhancement "[i]f the offense involved a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency." U.S.S.G. § 2B1.1(b)(9)(A). The commentary notes that the charity enhancement "applies in any case in which the defendant represented that the defendant was acting to obtain a benefit on behalf of a charitable . . . organization." U.S.S.G. § 2B1.1 cmt. 8(B).

As the district court saw it and as the government sees it, Webster deserves the enhancement. He pretended to "act[] on behalf of a charitable . . . organization," U.S.S.G. § 2B1.1(b)(9)(A), when he solicited personal information from the victims on behalf of fake charities.

As Webster sees it, the enhancement does not apply. In his view, the commentary limits the application of the charity enhancement, and he was not acting to obtain a benefit on behalf of a charitable organization (as the commentary seems to require). As a general matter, the text of a guideline trumps commentary about it. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that commentary is not authoritative if it "is inconsistent with, or a plainly erroneous reading of," the guideline it interprets or explains). But we need not resolve whether the commentary together with the guideline suggests that the enhancement does not apply in this instance. Either way, Webster cannot credibly claim that any error (if error there was) was "plain"—which is to say "obvious or clear." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quotation marks omitted). By itself, the text of the guideline favors the government. The recently added commentary to be sure introduces a complication but one that by no means makes the enhancement in this case obviously wrong. No plain error thus occurred.

*The vulnerable-victim enhancement.* The sentencing guidelines also provide a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). Before the district court, Webster argued that his identity-theft victims were not "vulnerable." Webster takes a different tack on appeal. Apparently conceding that the relevant individuals were vulnerable, he now argues that they did not count as "victims" because they never suffered any financial loss. Because Webster never presented this ground to the district court even after being given an opportunity to do so, we review only for plain error. *See United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004); *Vonner*, 516 F.3d at 386. That standard "equally applies to instances where the objection raised on appeal . . . is not based upon the same grounds" raised below. *United States v. Campbell*, 86 F. App'x 149, 156 (6th Cir. 2004); *see United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989).

A "vulnerable victim," the guidelines tell us, is "a victim . . . who is unusually vulnerable" due to conditions that make him "particularly susceptible" to the defendant's conduct. U.S.S.G. § 3A1.1 cmt. 2. Who counts as a "victim"? At a minimum, the term covers not only victims "of the offense of conviction" but also victims of "any conduct for which the defendant is accountable" under the guidelines. *Id.* Unlike other guidelines, however, § 3A1.1 does not define "victim" as a standalone term limited to those who suffered a particular sort of injury. *Compare id.*, *with* U.S.S.G. § 2B1.1 cmts. 1 & 3(A)(i) (requiring "pecuniary harm" or "bodily injury"). "In the absence of such a definition," we give the term "its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). Ordinary usage and legal usage in this instance point in the same direction. In ordinary usage, a victim is someone "tricked, duped, or subjected to hardship," or someone "used or taken advantage of." *Webster's Third New*

*International Dictionary* 2550 (rev. ed. 2002). In legal usage, a victim is someone "harmed by a crime." *Black's Law Dictionary* 1798 (10th ed. 2014). Both definitions are broad, to be sure. But there is nothing wrong with giving broad terms a broad reading. That is especially so here because the Sentencing Commission omitted the financial-or-physical-injury requirement included in § 2B1.1. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

Consistent with this understanding of the term, the vulnerable-victim cases do not require a specific type of injury to qualify someone as a victim, only an individualized "harm" distinct from injury to society at large. *See United States v. Moon*, 513 F.3d 527, 541 (6th Cir. 2008); *see also United States v. Kennedy*, 554 F.3d 415, 423–24 (3d Cir. 2009) (applying the enhancement when the victims suffered no financial loss); *United States v. Stewart*, 33 F.3d 764, 770–71 (7th Cir. 1994) (same); *United States v. Yount*, 960 F.2d 955, 957–58 (11th Cir. 1992) (same); *United States v. Bachynsky*, 949 F.2d 722, 735–36 (5th Cir. 1991) (same).

Webster's identity-theft victims qualify as "victims" within the meaning of § 3A1.1(b)(1), even if they did not suffer any (known) financial loss. People who have their identities stolen, as we suspect any such person would agree, have been individually harmed. Not only have they been duped and taken advantage of, but they also must correct the problem, whether by establishing new bank accounts, obtaining new credit cards, or reissuing other identifying information now in the possession of others. Whether or not his victims lost money, Webster stole their personal information and used it to file fraudulent tax returns. That in itself causes harm. *Cf.* Amendments to the Sentencing Guidelines, 74 Fed. Reg. 21,750, 21,751 (May 8, 2009) (stating that identity-theft victims who have been fully reimbursed have nevertheless suffered loss—and are therefore victims—because of the significant time involved in resolving credit problems and other related issues). The trouble associated with reclaiming identities and

sorting out any issues with the Internal Revenue Service is all too real—a reality hardly lost on Webster. At sentencing he told the district court he was "sure out of th[e] five hundred or so victims, I ruined a few of their lives." R. 38 at 19.

*United States v. Dixon*, 66 F.3d 133 (6th Cir. 1995), Webster submits, requires "financial loss" to qualify someone as a victim. Yet *Dixon* is not that sweeping. It rejected a vulnerable-victim enhancement because the alleged victim suffered no injury on account of the defendant's *offense of conviction*. *Id.* at 135–36. That is not true here, where the offense and the individuals protected by the statute overlap. Since *Dixon*, moreover, the Sentencing Commission has expanded this enhancement to victims "of the offense of conviction *and any conduct for which the defendant is accountable*." U.S.S.G. § 3A1.1 cmt. 2 (emphasis added). That "relevant conduct" includes all acts committed "during . . . the offense of conviction." *Id.* § 1B1.3(a)(1); *see Moon*, 513 F.3d at 540. Whether *Dixon* remains good law in light of this new commentary remains to be seen. But for present purposes it does not aid Webster.

*United States v. Johns*, 686 F.3d 438 (7th Cir. 2012), also does not aid Webster's cause. It too did not issue a sweeping holding that an individual must suffer financial loss to be a victim. As to individuals unable to access equity in their homes due to Johns' illegal activity but who could not have accessed that equity anyway, the court found no harm. *Id.* at 455, 459–60. An identity-theft victim by contrast suffers harm, even if often non-financial harm, due at a minimum to the difficulties associated with restoring confidential identity information.

For these reasons, we affirm.