NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0356n.06

Case No. 21-5619

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 03, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) | |
| COREY LAMONT LANIER, | ) | |
| Defendant - Appellant. | ) | OPINION |

**Before: GIBBONS, BUSH, and MATHIS, Circuit Judges.**

GIBBONS, J., delivered the opinion of the court in which MATHIS, J., joined in full and BUSH, J., joined except as to Section IV. BUSH, J. (pp. 27–31), delivered a separate opinion concurring in part and dissenting in part.

JULIA SMITH GIBBONS, Circuit Judge. A jury convicted Corey Lanier of three counts of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and three counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Lanier was sentenced to 946 months' imprisonment. But after the Supreme Court invalidated the residual clause of § 924(c), Lanier's § 924(c) convictions were vacated, and he returned to the district court for resentencing. The district court imposed a new sentence of 360 months' imprisonment, and Lanier appeals. For the reasons set forth below, we vacate Lanier's sentence and remand for resentencing.

I.

Over the course of several months in 2009, Corey Lanier, along with other individuals, planned and executed armed robberies that targeted known drug dealers in the Nashville area. In the robberies, Lanier and his associates gained access to the targets' homes and demanded money and other valuables at gunpoint.

In one robbery, Lanier and three other men forcibly entered the home of Ryan McGuire, demanded money, and forced McGuire to crawl on the floor to the bedroom with a gun pointed at the back of his head. After discovering McGuire's girlfriend and children in the bathroom, the intruders also demanded money from McGuire's girlfriend. The children, seeing their father crawling along the floor, pled for his life. One of the robbers suggested that they should shoot the McGuire in front of his children, but the men ultimately left without doing so after taking $15,000 in cash and a laptop computer.

In another robbery, Lanier recruited three men to target the home of Markeith Davis. Lanier drove the group to the house and then waited in the car while the other men forcibly entered the home. Davis was not there, however, and the intruders found only two women, Tamika Beard and Lakeya Northern, an additional adult, and four young children. The men held a gun to Beard's neck, forced the children to go to and remain in one of the back rooms, and demanded firearms from the adults. The men then forced Northern to another room at gunpoint, where they discovered and grabbed drugs. At various times, the men pointed their weapons at the victims and told them not to move, and at one point, they threw Northern to the floor. The men eventually fled with three to four ounces of crack cocaine and several thousand dollars in cash.

In the final robbery, Lanier identified the target, Angela Rogan, because Lanier had been told that she would have a large amount of money that her husband left when he went to federal

prison. Lanier organized the robbery but did not directly participate because he feared that the victims would be able to identify him. Lanier's coconspirators posed as potential buyers of two vans that Rogan was trying to sell, and when they went to her home ostensibly to complete the sale, the men pulled out guns and announced that it was a robbery. The men held Rogan and her son at gunpoint, dragging her around the house and hitting her with the gun while demanding to know where the money was located. Eventually, an acquaintance of Rogan's called the police, and the men were arrested.

Based on this conduct, Lanier was charged in a six-count indictment. For each of the three robberies, Lanier was charged with two counts—conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). A jury convicted Lanier on all counts.

In advance of Lanier's sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR"). For the Hobbs Act conspiracy counts, the PSR calculated a total offense level of 32[1] and a criminal history category of VI, which yielded an advisory range of 210 to 262 months.

At sentencing, Lanier moved for a departure or downward variance on the Hobbs Act counts, arguing that the mandatory minimum for the § 924(c) counts already imposed what effectively amounted to a life sentence. The court denied Lanier's motion and sentenced him at the top of the advisory range. For the convictions under § 924(c), the court ordered the sentences to run consecutively, as required by statute. The court imposed a total sentence of 946 months'

---

[1] The offense level was based in part on the finding that Lanier was a career offender under U.S.S.G. § 4B1.1.

imprisonment, with 262 months on the Hobbs Act counts,[2] to be followed by terms of 84 months, 300 months, and 300 months on the § 924(c) counts.

Lanier unsuccessfully challenged his convictions on direct appeal. He then moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Lanier argued, among other things, that his § 924(c) convictions were invalid under *Johnson v. United States*, 576 U.S. 591 (2015), because they were based on Hobbs Act conspiracy, which did not satisfy the force clause of § 924(c)(3)(A). After the Supreme Court invalidated the residual clause of § 924(c)(3)(B) in *United States v. Davis*, 139 S. Ct. 2319 (2019), the district court vacated Lanier's § 924(c) convictions and ordered that he be resentenced.

For Lanier's resentencing, the Probation Office prepared a new PSR. The revised PSR calculated a total offense level of 38 and a criminal history category of VI, resulting in a Guidelines range of 360 months to life imprisonment. The offense level was based on Count Three because that count carried the highest offense level at 35.[3] The PSR then applied a three-level multi-count enhancement under U.S.S.G. § 3D1.4, resulting in the final level of 38. The government did not file any objections. Lanier, proceeding pro se with the help of appointed elbow counsel, raised objections to various aspects of the new PSR. Relevant here, Lanier objected to several enhancements recommended by the PSR as well as the consecutive nature of the sentences.

---

[2] Counts One, Three, and Five each carried a 240-month statutory maximum. The court sentenced Lanier to 240 months on Counts One and Three, to be run concurrently, and 22 months on Count 5 that ran consecutive to Counts One and Three.

[3] Count Three was based on the third robbery, the one involving Tamika Beard and Lakeya Northern. Because Count Three became the baseline for the other Guideline determinations, Lanier's objections focus on the enhancements applied to that count.

The first enhancement to which Lanier objected was a two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1). The original PSR did not recommend this enhancement, and the government raised no objection to its nonapplication at Lanier's original sentencing. The revised PSR explained that the enhancement applied because four young children were present at the robbery underlying Count 3. The PSR added the recommendation even though the facts supporting the enhancement were known at the original sentencing and there were no applicable intervening changes in the Guidelines or caselaw. The resentencing judge overruled Lanier's objection and applied the enhancement.[4]

The second enhancement to which Lanier objected was a two-level enhancement under § 2B3.1(b)(4)(B) for "physically restrain[ing]" a person to facilitate the commission of the robbery or to facilitate escape.[5] The PSR applied this enhancement based on the finding that Lakeya Northern was forced to move at gunpoint so that the men could locate and take drugs. The court overruled Lanier's objection and applied the enhancement.

The final enhancement to which Lanier objected was a six-level enhancement under § 2B3.1(b)(2)(B), for "otherwise us[ing]" a firearm during the robbery. The PSR explained that the enhancement applied because "during the robbery, a gun was held to Tamika Beard's neck, and the robbers held Tamika Beard and Lakeya Northern at gunpoint and told them not to move." DE 345, 2020 PSR, Page ID 3118. The original PSR had not applied this enhancement because the § 924(c) counts, which punished the use of a firearm, precluded the application of additional

---

[4] The resentencing judge, who was not the original sentencing judge, did note that he "struggle[d] with . . . the issue of the enhancement for vulnerable victims that was not included in the original presentence report." DE 342, Resent. Tr., Page ID 3079.

[5] The original PSR also applied this enhancement.

specific offense characteristics for possession, brandishing, use, or discharge of a firearm. The court again overruled Lanier's objection and applied the enhancement.

After applying all of the recommended enhancements, the district court went on to agree with the PSR's calculation of Lanier's criminal history points and criminal history category. Using the total offense level of 38 and criminal history category of VI, the court calculated a Guidelines range of 360 months to life imprisonment.

Finally, the court addressed the 18 U.S.C. § 3553 factors. It first acknowledged that Lanier had a history of childhood abuse and grew up in a "somewhat dangerous environment." DE 342, Resent. Tr., Page ID 3078. The court also noted the national disparity factor. Although Lanier had submitted documentation of fifty Hobbs Act robbery and conspiracy sentences, the court commented only that Lanier presented a "disparity argument" without engaging in any extended analysis. *Id.* at 3077.

The court then sentenced Lanier to 360 months' imprisonment, the low end of the Guidelines range. The court structured the sentence as 98 months for Count One, 240 months for Count Three, and 22 months for Count Five. The court then stated that the sentences would "run consecutively as required under Section 5G1.2(d) of the guidelines." DE 342, Resent. Tr., at Page ID 3079. After the court announced the sentence, Lanier objected to running the sentences consecutively but did not state a specific basis for his objection, saying only, "I object to the consecutive sentences."[6] *Id.* at Page ID 3087. The court overruled Lanier's objection. *Id.*

---

[6] Lanier also objected to running the sentences consecutively in his response to the PSR. This objection challenged the PSR's conclusion that the three counts should not be grouped under § 3D1.2(a)-(d) because they did not involve substantially the same harm. Lanier does not pursue that argument on appeal.

II.

On appeal, Lanier argues that his sentence is both procedurally and substantively unreasonable, identifying several claimed errors. First, Lanier argues that the district court erred when it imposed consecutive sentences based on an apparent belief that the Guidelines required it. Second, Lanier argues that the district court erred when it applied the vulnerable victim enhancement even though the enhancement was not recommended or litigated at his original sentencing. Third, Lanier argues that the district court erred by engaging in impermissible double counting when it applied both a firearm and physical restraint enhancement. Finally, Lanier argues that the district court erred by failing to properly address his national disparity argument.

Review of a criminal sentence considers the substantive and procedural reasonableness of the sentence. *United States v. Snelling*, 768 F.3d 509, 511 (6th Cir. 2014). "Substantive reasonableness is concerned with the length of a sentence," and procedural reasonableness "is concerned with the method by which the court arrives at the sentence." *Id.* at 511–12. Thus, a reasonableness review assesses the length of the sentence, the factors that the district court evaluated in imposing the sentence, and the procedures employed to reach the sentence. *United States v. Herrera-Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009).

A sentence is procedurally unreasonable if it is marked by "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court must also "explain[ ] its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Trejo-Martinez*, 481 F.3d 409, 412–13 (6th Cir. 2007). "The sentencing judge should set forth enough to satisfy the appellate

court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

A sentence is substantively unreasonable if it is based on impermissible factors, is arbitrary, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any particular § 3553(a) factor. *United States v. Brown*, 501 F.3d 722, 724 (6th Cir. 2007). In conducting this review, we consider the totality of the circumstances, but "a sentence that falls within the Guidelines range warrants a presumption of reasonableness." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (internal quotation marks omitted).

We review sentencing determinations for abuse of discretion. *United States v. Gillispie*, 929 F.3d 788, 789 (6th Cir. 2019). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) (citation and internal quotation marks omitted). If a party fails to object in the district court, however, plain error review applies. *United States v. Alexander*, 543 F.3d 819, 823 (6th Cir. 2008); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Plain error is an "egregious error, one that directly leads to a miscarriage of justice," *United States v. Frazier*, 936 F.2d 262, 266 (6th Cir. 1991), or error that is obvious, affects substantial rights, and seriously impairs the fairness or integrity of the judicial proceedings, *United States v. Modena*, 302 F.3d 626, 630 (6th Cir. 2002).

"A party 'must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.'" *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). A specific objection allows the district court "an opportunity to address the error" and "allows this court to engage in more meaningful review." *Id.* To encourage appropriate objections,

after announcing the sentence, district courts must "ask the parties whether they have any objections to the sentence . . . that have not previously been raised." *Id.* at 872. The so-called *Bostic* question is "especially pertinent with respect to objections that concern the adequacy of the court's explanation precisely because such objections cannot be made until after the court states its reasoning in the course of sentencing the defendant." *United States v. Simmons*, 587 F.3d 348, 354 (6th Cir. 2009).

III.

Lanier's first argument challenges the district court's decision to run his sentences consecutively. His argument includes two related components. First, he argues that the district court erroneously believed that the Guidelines required mandatory consecutive sentences. Second, he argues that the district court failed to adequately explain its decision to impose consecutive sentences.

The parties dispute what standard of review applies to this claim. Lanier seeks review for abuse of discretion, arguing that he preserved the issue by objecting both before and after the court's *Bostic* question. Lanier highlights that he was a pro se litigant at his resentencing and argues that his multiple objections met the lower bar required of a pro se petitioner. The government, in contrast, contends that plain error review applies because Lanier did not properly object. Specifically, the government argues that Lanier raised a different objection before sentencing—that the district court could not impose consecutive sentences—and that Lanier has now abandoned that position. The government then argues that Lanier's response to the *Bostic* question did not identify any basis or reasoning for his objection, so it was insufficient to preserve the issue.

We need not decide this issue, however, because, as explained below, the district court misstated the law when imposing Lanier's sentence, and that misstatement constitutes reversible error even under plain error review. *See United States v. Rainier*, 314 F. App'x 846, 847 (6th Cir. 2009) ("where the district court states that [the Guidelines] require[] that it impose a consecutive sentence, the court has failed to recognize its discretion, the statement constitutes plain error, and the case must be remanded for resentencing.").

When a district court considers whether to impose concurrent or consecutive sentences, statutory and Guidelines provisions both influence the determination. To start, the general rule is that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." 18 U.S.C. § 3584(a). Under U.S.S.G. § 5G1.2(d), however, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." Thus, in situations where the Guidelines range exceeds the statutory maximum for each individual count, like Lanier's, the Guidelines appear to make a consecutive sentence mandatory.

Despite this Guidelines directive, however, federal law requires sentencing courts to exercise discretion in choosing between a consecutive and concurrent sentence. 18 U.S.C. § 3584(b) ("The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider . . . the factors set forth in section 3553(a)."). Applying 18 U.S.C. § 3584, we have recognized that, despite the seemingly mandatory language of U.S.S.G. § 5G1.2(d), district courts have "discretion to impose consecutive or concurrent sentences." *Rainier*, 314 F. App'x at 847.

To exercise this discretion, a sentencing court considering whether to run sentences concurrently or consecutively must consider the factors set forth in § 3553(a), *see* 18 U.S.C. § 3584(b), and must identify "'the rationale under which it has imposed the consecutive sentence.'" *United States v. Ross*, 375 F. App'x 502, 506 (6th Cir. 2010) (quoting *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009)). A court need not state a "specific reason for a consecutive sentence" aside from that general rationale, and it is sufficient if the court "incorporate[s] by reference a discussion of the relevant considerations in another document such as the Presentence Report," or "make[s] clear that its reasons for choosing a substantive sentence and for running two sentences consecutively are the same." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012) (citation omitted). A district court, however, "commits reversible error when it mistakenly believes that the Guidelines compel the imposition of a consecutive sentence." *United States v. Eddy*, 468 F. App'x 487, 489 (6th Cir. 2012) (citing *United States v. Jackson*, 244 F. App'x 727, 728–29 (6th Cir. 2007)); *United States v. Green*, 157 F. App'x 853, 858 (6th Cir. 2005); *United States v. Sparks*, 19 F.3d 1099, 1101 (6th Cir. 1994); *United States v. Gibbs*, 506 F.3d 479, 483 (6th Cir. 2007)).[7]

Here, before imposing the sentence, the district court went through the § 3553(a) factors, noting various items that would impact the sentence. Then, the court announced that Lanier would be sentenced to "a total term of 360 months." DE 342, Resent. Tr., Page ID 3079. The court explained that the sentence would be allocated as 98 months on Count One, 240 months on Count Three, and 22 months on Count Five. The court stated that the three sentences would "run

---

[7] These cases involved the application of other sections of the Guidelines, but the reasoning of those cases applies equally to § 5G1.2(d). Further, in *United States v. Eversole*, we noted that "after *Booker*, [§ 5G1.2(d)] is no longer mandatory." 487 F.3d 1024, 1033 (6th Cir. 2014) (citing *United States v. Booker*, 543 U.S. 220 (2005)).

consecutively as required under Section 5G1.2(d) of the guidelines." *Id.* The district court offered no other explanation for running the sentences consecutively.

The statement that consecutive sentences were required by the Guidelines, absent any other explanation, indicates that the district court "mistakenly believe[d] that the Guidelines compel[led] the imposition of a consecutive sentence." *Eddy*, 468 F. App'x at 489. Although the court had the discretion to impose consecutive sentences, its apparent failure to recognize its discretion and consider the § 3553(a) factors constitutes reversible error. *Ross*, 375 F. App'x at 506.

The government resists this conclusion, arguing that the district court understood its discretion,[8] as evidenced by its proper calculation of the Guidelines range, consideration of Lanier's argument for a downward variance, and selection of the overall sentence. In support of its point, the government cites *United States v. Banks*, in which the Seventh Circuit rejected the defendant's claim that the district court mistakenly considered the Guidelines mandatory. 828 F.3d 609, 619–20 (7th Cir. 2016). In its analysis, the Seventh Circuit noted that the sentencing judge "entertained Banks's argument for a below-Guidelines sentence and imposed the 432-month sentence before discussing whether and to what extent the counts would run concurrently or consecutively." *Id.* The Seventh Circuit found that these facts suggested that the sentencing judge understood its discretion. *Id.* Similarly, the district court in Lanier's case entertained Lanier's variance arguments, imposed the total sentence before allocating it across the counts, and never indicated that it wanted to impose a sentence less than 360 months but could not because of the Guidelines.

---

[8] The government also points out that there "is a presumption . . . that a district court knows and applies the law correctly." *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006). This presumption, however, does not outweigh a district court's explicit misstatement of the law. *See Eddy*, 468 F. App'x at 490.

But, unlike in *Banks*, the district court in Lanier's case explicitly stated that the sentences would run consecutively "as required under section 5G1.2(d) of the guidelines." DE 342, Resent. Tr., at Page ID 3079. The district court did not provide any other explanation or rationale for the consecutive sentences, even after Lanier raised his objection in response to the *Bostic* question. Absent any other explanation for imposing consecutive sentences, the district court's explicit misstatement of law constitutes reversible error. *See Eddy*, 468 F. App'x at 489; *Jackson*, 244 F. App'x at 728–29; *Green*, 157 F. App'x at 858; *Sparks*, 19 F.3d at 1101; *Gibbs*, 506 F.3d at 483.

IV.

Lanier's second argument challenges the application of the vulnerable victim enhancement. Lanier first argues that the enhancement cannot be applied because it was not recommended nor litigated at his original sentencing. Lanier also argues that the enhancement does not apply on the merits.

We review waiver issues as mixed questions of law and fact. *United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009). When, as here, a litigant challenges only the district court's legal conclusions, de novo review applies. *Id.* Review of the district court's authority on resentencing is a question of law reviewed de novo. *United States v. Gordils*, 117 F.3d 99, 101 (2d Cir. 1997). Finally, de novo review also applies when a litigant challenges the legal conclusion of whether undisputed facts trigger a sentencing enhancement. *See United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015).[9] Plain error review applies, however, if a party fails to raise an objection in the district court. *United States v. Webster*, 615 F. App'x 362, 364 (6th Cir. 2015).

---

[9] Sixth Circuit caselaw is somewhat unclear about the standard of review that applies when a party challenges the application of an enhancement to undisputed facts. *See United States v. Thomas*, 933 F.3d 605, 608–10 (6th Cir. 2019). Most cases, however, apply de novo review to purely legal questions. *Id.* Here, because the facts are undisputed and Lanier challenges only the district court's legal conclusions as to the enhancement's application, de novo review applies.

Plain error review also applies if the objection raised on appeal is based on different grounds that the one raised in the district court. *Id.* (citation omitted).

The parties again dispute the standard of review. Lanier maintains that his waiver and scope of authority arguments should be reviewed de novo, and his merits claim should be reviewed for abuse of discretion. In support of these points, Lanier argues that he preserved the issues in his written response to the PSR. The government, in contrast, argues that plain error review applies to Lanier's claims because the objections he made in the district court differ from those raised on appeal. Specifically, the government argues that, in the district court, Lanier based his objection to the enhancement on (now-abandoned) allegations of prosecutorial and judicial vindictiveness.

In Lanier's written response to the revised PSR, he objected to the vulnerable victim enhancement, arguing that it was "not applicable" because it was "never applied to the Guidelines calculation in the original presentence report prepared for the original sentencing (10 years ago)" and "the government did not object . . . back then." DE 313, Pos. Re. PSR, Page ID 2934. Admittedly, Lanier also claimed in his objections that the newly added enhancement was "nothing more than retaliation for successfully attacking the career offender enhancement and 924(c) convictions." *Id.* But Lanier's primary argument was that the enhancement could not be added for the first time at the resentencing when the government did not object to its omission at the original sentencing. Given that Lanier was proceeding pro se, and that pro se litigants' objections are construed liberally, *see United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016), Lanier preserved the issue. Accordingly, we review the district court's application of the vulnerable victim enhancement de novo.

Lanier identifies both the law-of-the-case and waiver doctrines as bases for barring the vulnerable victim enhancement's application at his resentencing. The law-of-the-case doctrine

"bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997). The doctrine also precludes consideration of issues "decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *United States v. Knight*, 789 F. App'x 531, 532 (6th Cir. 2020) (internal quotation marks omitted). We have cautioned, however, that the law-of-the-case doctrine has "little applicability in the sentencing arena." *United States v. Hebeka*, 89 F.3d 279, 284 (6th Cir. 1996). Because "there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district judge from revisiting the entire sentencing procedure unless restricted by the remand order," *United States v. Duso*, 42 F.3d 365, 368 (6th Cir. 1994), a "district court can hear any relevant evidence . . . that it could have heard at the first hearing" on a general remand for resentencing, *United States v. Moored*, 38 F.3d 1419, 1422 (6th Cir. 1994).

Here, the law-of-the-case doctrine does not apply. First, Lanier's case returned to the district court on a general remand,[10] and the typical rule is that a district court may consider any issue that it could have heard at the first sentencing. *See id.* Second, whether the vulnerable victim enhancement applied to the facts of Lanier's conviction was not decided, either explicitly or by necessary inference, in the first sentencing. The vulnerable victim enhancement in Lanier's case

---

[10] Lanier also contends that his resentencing had a limited scope, with the court empowered to address "only those issues necessary to correct interdependent convictions affected by vacatur." CA6 R. 28, Appellant Br., at 23. Thus, according to Lanier, application of the vulnerable victim enhancement was "improper because its application did not hinge on vacatur but was an *independent*—and not interdependent—matter." *Id.* (emphasis in original). The presumption, however, is that "on remand following a direct appeal, a district court can consider de novo any arguments regarding sentencing if the remand order does not limit its review." *Saikaly*, 207 F.3d at 369. This presumption extends to remands following successful § 2255 motions. *See United States v. Flack*, 941 F.3d 238, 240–41 (6th Cir. 2019). Here, on the general remand Lanier's case, the district court's authority was not limited to certain issues, and it could consider any (non-waived) arguments. *Saikaly*, 207 F.3d at 369.

was never raised in the original sentencing or direct appeal, nor did any of the original sentencing court's reasoning implicitly decide the issue. Thus, the law-of-the-case doctrine does not preclude the vulnerable victim enhancement.

The related doctrine of waiver, however, does apply. Generally, "on remand following a direct appeal, a district court can consider de novo any arguments regarding sentencing if the remand order does not limit its review." *United States v. Saikaly*, 207 F.3d 363, 369 (6th Cir. 2000). But "when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals occurring in that case." *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000). A narrow exception to the waiver doctrine exists, permitting parties to "address issues on remand not addressed during the initial sentencing appeal," but it applies only "if the moving party had been either unable to assert the issue initially or the issue only became logically relevant following remand." *Boudreau*, 564 F.3d at 435 n.1 (6th Cir. 2009).

The waiver doctrine is based on the belief that "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better . . . than one who had argued and lost." *Adesida*, 129 F.3d at 850 (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)). The doctrine also "discourages 'perpetual litigation' and promotes finality in criminal proceedings by requiring that parties seek review of a claim in the first appeal." *United States v. Traxler*, 517 F. App'x 472, 474 (6th Cir. 2013) (quoting *McKinley*, 227 F.3d at 719).

We have applied the waiver doctrine in the sentencing context. *See United States v. Wynn*, 485 F. App'x 766, 772 (6th Cir. 2012) (finding that the defendant waived any objection to the classification of his conviction and could not later challenge it as a predicate offense); *United States v. Sedore*, 512 F.3d 819, 827 (6th Cir. 2008) (holding that the defendant waived any argument that there was only one victim for sentencing-enhancement purposes because he did not

raise it in his first appeal or resentencing hearing); *United States v. Mitchell*, 232 F. App'x 513, 517 (6th Cir. 2007) ("Because [the defendant] did not object to the district court's application of the enhancement under [U.S.S.G.] § 2K2.1(b)(5) in his prior appeal, [he] is foreclosed from raising the objection now."); *McKinley*, 227 F.3d at 718.

In *United States v. McKinley*, we applied the doctrine against the government, holding that the government waived its argument for application of a sentence enhancement by abandoning it in the original appeal. 227 F.3d at 718–19. The government had requested the enhancement in the district court, but after the district court declined to apply it, the government did not pursue the issue on appeal. *Id.* In finding that the government waived the issue by failing to raise it on appeal, we noted that although "the district court may entertain any issues it feels are relevant to the overall sentencing decision (following a general remand), this does not give the parties license to re-assert issues that they should have raised during an earlier appeal." *Id.* (citing *Hebeka*, 89 F.3d at 284–85). We further explained that the waiver doctrine "exists to forestall this kind of perpetual litigation by notifying parties that they will forfeit their claims if they fail to seek review in the first appeal." *Id.* at 719.

The government in Lanier's case never requested the vulnerable victim enhancement in his original sentencing. In contrast, the government in *McKinley* made an affirmative choice to abandon the enhancement after arguing for it unsuccessfully in the district court. *Id.* Despite that difference, however, the waiver doctrine applies equally here. We explained the waiver doctrine in *McKinley* as precluding "issues [the party] should have raised" previously. *Id.* at 718. Nothing prevented the government from raising the vulnerable victim enhancement in Lanier's original

sentencing.[11]  There were no changes in the caselaw, Guidelines, or understanding of the facts as

they pertained to the vulnerable victim enhancement between the original sentencing and the

resentencing.  The government chose not to request the vulnerable victim enhancement[12] at

---

[11] The government argues that, even if the enhancement was erroneously applied, it was harmless error.  The government highlights the district court's comments at the sentencing hearing:

> But I will note that without that enhancement, which I think is appropriate given the presence of the children during these robberies, especially with Count Three, the Court—Count Three would still be the highest count for the guideline calculation of those three counts.  And even if the offense level didn't include a victim enhancement, it would have been an offense level 36, Criminal History VI, which would have put a range of 324 to 405 months.  So the 360-month sentence is still within that guideline range, albeit in the middle, as opposed to the low end, and I will just note that for the record.

The government argues that these comments show that the district court would have imposed the same sentence even without the enhancement, rendering it harmless error.  To establish harmless error, the government must show "*with certainty* that the error at sentencing did not cause the defendant to receive a more severe sentence." *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009) (emphasis in original).  The court's statement here, however, does not establish that with certainty.  The district court indicated that the sentence would still be within the Guidelines range, but it did not state that it would impose the same sentence without the enhancement. *Cf. United States v. Morrison*, 852 F.3d 488, 491–92 (6th Cir. 2017).  Therefore, the comment does not establish that the error was harmless.

[12] The dissent points out that it was the probation officer and not the government who raised the enhancement at the resentencing and that the probation officer is not a party capable of waiving or forfeiting issues.  But this fact does not change the outcome.  First, despite the probation officer's role in recommending enhancements, the government ultimately bears the burden to prove that a particular enhancement applies. *See United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012) (citing *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012)).  Here, the probation officer prepared a PSR before each of Lanier's sentencing hearings, and the parties had the opportunity to object to the PSR's recommendations, either to argue that a recommended enhancement did not apply or that an enhancement that was not recommended did apply.  By failing to object to the enhancement's omission in the original sentencing, the government waived the issue.  At the resentencing, the government again was the party that bore the burden to prove that the enhancement applied.  Thus, its waiver of the issue in the first sentencing extended to the second.  The fact that the probation officer recommended it is immaterial because, as the dissent acknowledges, the probation officer's recommendations were merely advisory. *See United States v. Gaines*, 888 F.2d 1122, 1123–24 (6th Cir. 1989) (per curiam) (noting that probation officers make recommendations but that the ultimate sentencing decision is left to the district court).

Lanier's original sentencing, and accordingly, it waived any argument for the enhancement's application at his resentencing.[13]

V.

Lanier next argues that the district court erred when it applied both a firearm and a physical restraint enhancement, claiming that it based both enhancements on the same conduct and therefore engaged in impermissible double counting. At his resentencing, Lanier objected to the application of both enhancements, preserving the issue. *See United States v. Boards*, 202 F. App'x 869, 871 (6th Cir. 2006). Because Lanier challenges only the district court's legal conclusions that the enhancements apply, and not its findings of fact, we review de novo. *See United States v. Mitchell*, 227 F. App'x 472, 473 (6th Cir. 2007); *United States v. Bolden*, 479 F.3d 455, 460–61 n.1 (6th Cir. 2007); *United States v. Coleman*, 664 F.3d 1047, 1048 (6th Cir. 2012).

"[I]mpermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007) (quotations omitted). Although we take a "dim view of double counting," *United States v. Smith*, 196 F.3d 676, 681 (6th Cir. 1999), "not all instances of double counting are impermissible," *United States v. Fleischer*, 971 F.3d 559, 570 (6th Cir. 2020). Thus, the first step is to consider whether double counting occurred. *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017). Double counting does not occur if the conduct supporting each enhancement is distinct. *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996). Similarly, double counting does not occur "where separate enhancements penalize distinct aspects of the defendant's conduct"

---

[13] Because we hold that the government waived the enhancement's application, we need not decide whether it applies on the merits.

to punish "conceptually distinct kind[s] of harm." *Eversole*, 487 F.3d at 1030 (citations and internal quotation marks omitted).

If double counting occurs, the second step is to determine whether it is impermissible. *Duke*, 870 F.3d at 404; *see also United States v. Farrow*, 198 F.3d 179, 194 (6th Cir. 1999). Double counting is permissible where "the Sentencing Guidelines expressly mandate double counting . . . through the cumulative application of sentencing adjustments." *Farrow*, 198 F.3d at 194. Double counting is also permissible where "Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id.*

Here, Lanier argues that application of both enhancements amounts to double counting because the enhancements punish the same conduct. Further, Lanier argues that neither Congress nor the Sentencing Commission explicitly or implicitly approved of double counting in this scenario. The government, in contrast, argues that the enhancements punish separate behavior and discrete harms and that both Congress and the Sentencing Commission intended double counting.

The firearm enhancement, under § 2B3.1(b)(2) of the Guidelines, adds a varying number of levels based on how the firearm is used during the course of a robbery. If a firearm is discharged, it adds seven levels. U.S.S.G. § 2B3.1(b)(2)(A). If a firearm is "otherwise used," it adds six levels. *Id.* § 2B3.1(b)(2)(B). If a firearm is "brandished or possessed," it adds five levels. *Id.* § 2B3.1(b)(2)(C). The "otherwise used" provision applies if, for example, a robber "point[s] a firearm at an individual and mak[es] a demand of that individual," such as directing her to stay still. *United States v. Bolden*, 479 F.3d 455, 461 (6th Cir. 2007).

The physical restraint enhancement, under § 2B3.1(b)(4)(B) of the Guidelines, adds two levels in cases in which the defendant "physically restrained" any person "to facilitate commission of the offense or to facilitate escape." This enhancement applies if, for example, a robber

brandishes a firearm and forces an individual to move from one location to another. *Coleman*, 664 F.3d at 1050–51.

The 2020 PSR applied the "otherwise used" enhancement under § 2B3.1(b)(2)(B) based on the finding that "during the robbery, a gun was held to Tamika Beard's neck, and the robbers held Tamika Beard and Lakeya Northern at gunpoint and told them not to move while demanding firearms," and at one point, "Northern was also thrown to the floor." DE 345, 2020 PSR, Page ID 3118–19. The PSR then applied the "physical restraint" enhancement under § 2B3.1(b)(4)(B) based on the finding that "Lakeya Northern was forced at gunpoint to move to another room to facilitate the robbery of the drugs." *Id.* at 3119.

The application of both enhancements in Lanier's case did not constitute double counting. First, the two enhancements applied based on separate conduct. The PSR recommended the firearm enhancement because the men held the victims at gunpoint and made demands. This conduct justifies the firearm enhancement. *See Bolden*, 479 F.3d at 461, 463. The PSR then recommended the physical restraint enhancement because the men forced Northern to move to another location. This separate conduct justifies the physical restraint enhancement. *See Coleman*, 664 F.3d at 1050–51. Although both incidents occurred close in time and as part of the same robbery, they represented distinct conduct.

The two enhancements also focused on separate harms. In *United States v. Hayes*, we rejected a double counting challenge based on a firearm conviction and the application of a physical restraint enhancement. 399 F. App'x 57, 61–62 (6th Cir. 2010). In that case, we acknowledged that the conviction and enhancement both arose from the same conduct but concluded that they punished "different aspects of the defendant's conduct." *Id.* at 61 (citation and internal quotation marks omitted). In Lanier's case, the firearm enhancement punished the

use of guns to force the victims to provide information and not to interfere with the robbery. The physical restraint enhancement punished the fact that the robbers forced one of the victims to move to another location against her will. These are distinct harms.

Because the two enhancements were based on separate conduct and distinct harms, their application did not constitute double counting.[14]

VI.

Lanier's final argument is that the district court erred by failing to consider the disparities between Lanier's sentence and other similar sentences. The argument is two-fold. First, Lanier argues that the district court failed to adequately explain its reasoning as to the issue of national disparities, rendering the sentence procedurally unreasonable. Second, Lanier contends that the district court imposed a sentence that was too severe as compared to national norms, resulting in a sentence that was substantively unreasonable.

Again, we must first determine the standard of review. The government concedes that Lanier's substantive reasonableness claim should be reviewed for abuse of discretion, but it argues that his procedural reasonableness claim should be reviewed for plain error because Lanier did not object to the sufficiency of the court's explanation at the sentencing hearing. Lanier argues that both claims should be reviewed for abuse of discretion because he objected before and during the sentencing proceedings.

We agree with the government's position. Lanier did not object to the adequacy of the court's explanation regarding his national disparity argument at the sentencing hearing. His earlier filings, and their objections, do not extend to the adequacy of the court's explanation, because the

---

[14] Because application of the two enhancements did not constitute double counting, we need not decide whether Congress or the Sentencing Commission intended double counting in this instance.

explanation had not yet occurred. *Simmons*, 587 F.3d at 354. Thus, we review Lanier's procedural reasonableness claim for plain error. Because Lanier preserved his substantive reasonableness claim when he objected to the length of his sentence based on his national disparity argument, we review for abuse of discretion.

To be procedurally reasonable, a district court's sentence must be free from "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. With respect to adequacy of a district court's explanation for the sentence imposed, we grant substantial leeway to the district court's professional judgment about how much explanation is warranted. *Rita v. United States*, 551 U.S. 338, 356 (2007). That is, we defer to the district court to determine "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say," depending on the circumstances. *Id.* Where, as here, plain error review applies, we are even more deferential. *Vonner*, 516 F.3d at 386.

"In passing sentence, district courts must address legitimate mitigating arguments raised by the defendant." *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018). A district court, however, "need not engage in a formulaic point-by-point refutation of a defendant's mitigation arguments." *Id.* Similarly, a sentencing court need not address a defendant's argument if it lacks a factual basis, is without legal merit, or presents "conceptually straightforward" issues. *Simmons*, 587 F.3d at 361–62. Instead, a "district court discharges its duty so long as it 'conduct[s] a meaningful sentencing hearing and truly consider[s] the defendant's arguments.'" *Sweeney*, 891 F.3d at 239 (quoting *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010)). Thus, the question "is whether the record makes clear that the sentencing judge listened to each argument,

considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (quoting *Vonner*, 516 F.3d at 387) (cleaned up).

Before Lanier's resentencing, he submitted a table outlining the sentences of over fifty defendants with similar convictions. Lanier's elbow counsel further noted at the hearing that "in every case that I've seen, there's not one that's more than 240 months, and most are a lot less." DE 342, Resent. Tr., Page ID 3065. In acknowledgment, the court simply said, "[a]s I understand the arguments in the filings and presented here today, that Mr. Lanier issued a proportionality. There's also, as I understand it, a disparity argument presented." *Id.* at 3077. In its later discussion of the § 3553(a) factors, the court included "[t]he need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," but did not offer analysis of Lanier's circumstances as they related to that factor. *Id.* at 3079.

The district court's treatment of Lanier's national disparity argument does not establish that his sentence was procedurally unreasonable. Although the district court did not specifically engage with Lanier's disparity argument, it did reference it before delving into the § 3553(a) factors. The court went on to analyze the § 3553(a) factors at length, noting information offered by both the government and Lanier related to those factors. The court also discussed one of the enhancements to which Lanier objected, acknowledging that it found that issue particularly challenging. Thus, the court conducted "a meaningful sentencing hearing" and considered Lanier's arguments. *See Sweeney*, 891 F.3d at 239. Further, Lanier's disparity argument was conceptually straightforward, and the district court was no doubt familiar with its line of reasoning and did not need to extensively address it. *Simmons*, 587 F.3d at 362. Accordingly, on plain error

review, we hold that the district court's limited discussion of Lanier's disparity argument did not render the sentence procedurally unreasonable.

Next, Lanier's substantive unreasonableness claim effectively argues that his sentence is too long. This type of claim asserts that the district court "placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We apply a "highly deferential review" to such claims. *Id.*

Because Lanier's sentence was within the Guidelines, it is presumptively reasonable. *Id.* In his attempt to rebut this presumption, Lanier argues that his sentence "dramatically departs" from other sentences and that he provided the sentencing court with information showing that no other sentences with multiple counts exceeded 240 months. CA6 R. 28, Appellant Br., at 41. Thus, according to Lanier, the district court's imposition of a 360-month sentence was substantively unreasonable.

We disagree. First, a national disparity challenge to a within-Guidelines sentence will typically fail "because the Guidelines . . . address the statutory purpose of combatting disparity." *United States v. Hymes*, 19 F.4th 928, 937 (6th Cir. 2021) (citation and internal quotation marks omitted). Second, Lanier's submission of various sentences did not rebut the presumption of reasonableness that attached to his within-Guidelines sentence because the information was flawed. The information included state court sentences, omitted information about enhancements or criminal history category designations, and failed to identify the applicable Guidelines range for each case. Thus, Lanier has not carried his heavy burden of rebutting the presumption that his sentence is reasonable.

VII.

For these reasons, we vacate Lanier's sentence and remand for resentencing consistent with this opinion.

JOHN K. BUSH, Circuit Judge, concurring in part and dissenting in part. I join in the majority's well-reasoned opinion except for Section IV, which concerns the vulnerable victim enhancement. That enhancement has not been waived and should apply on the merits.

**I.**

As the majority opinion acknowledges, the "government in Lanier's case never requested the vulnerable victim enhancement in his original sentencing." Majority Op. at 17. Nor did the government request that enhancement in the present sentencing under review. *See* Appellee Br. at 31. Instead, the probation officer—not the government—recommended the vulnerable victim enhancement, as Lanier acknowledged in his objection to the presentence investigation report (PSR). R. 313, PageID 2934. In Lanier's words: "[t]he, [sic] U.S. Probation Officer asserts, pursuant to U.S.S.G. § 3A1.1(b)(1), a two-level enhancement for vulnerable victim applies." *Id.*

It was unnecessary for the government to argue for the enhancement for the probation officer to include it in the PSR. The probation office "operat[es] as an arm of the district court, [and] first creates a presentence investigation report." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). Probation officers receive their appointment from the district court, and the district court can remove probation officers from their positions. 18 U.S.C. § 3602(a). Pursuant to the Federal Rules of Criminal Procedure, probation officers submit the PSR to the district court before sentencing, and the PRS must "identify all applicable guidelines and policy statements of the Sentencing Commission." Fed. R. Crim. P. 32(d)(1)(A). We do not require the government to affirmatively argue for every enhancement recommended by a PSR. *See United States v. Whitelow*, 596 F. App'x 382, 385 (6th Cir. 2015).

The Guidelines regarding actions that qualify for a vulnerable victim enhancement are clear and apply here. When sentencing a defendant, the district court should apply "adjustments as

appropriate related to *victim*, role, and obstruction of justice from Parts A, B, and C of Chapter Three." U.S.S.G. § 1B1.1(a)(3) (emphasis added). "Probation officers have traditionally made such [sentencing] recommendation" to the district court, and while "the sentencing decision is ultimately one for the judge, we find nothing inappropriate in allowing the probation officer  to give advice to the [district] court." *United States v. Gaines*, 888 F.2d 1122, 1123–24 (6th Cir. 1989) (per curiam). The probation office did not overstep its role by recommending the vulnerable victim enhancement in the PSR because the district court maintained its discretion to accept, reject, or modify the PSR's recommendation.

The doctrine of waiver, even if it applied to the government, would not apply to the probation officer's recommendation of an enhancement. As the majority opinion observes, Lanier's sentencing in this case occurred after a general remand, which allows the "district court [to] consider de novo any arguments regarding sentencing if the remand order does not limit its review." Majority Op. at 16 (quoting *United States v. Saikaly*, 207 F.3d 363, 369 (6th Cir. 2000)). The majority then quotes *United States v. McKinley*, 227 F.3d 716 (6th Cir. 2000), to explain that "when a *party* fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals occurring in that case." 227 F.3d at 718 (emphasis added) (citations omitted). The probation officer, which is not a *party* to the sentencing, recommended the vulnerable victim enhancement, and the government did not argue for any changes to the PSR during this sentencing. Even more, the majority does not point to any case where a probation officer's recommendation of an enhancement is regarded as the government re-asserting a waived or forfeited argument.

Further, the government correctly noted that it never waived its argument for the vulnerable victim enhancement because it never intentionally relinquished or abandoned its known right. *See*

*United States v. Olano*, 507 U.S. 725, 733–34 (1993); Appellee Br. at 31. Nor is forfeiture at issue because the government did not assert an argument in the first instance here that it could have raised in a previous sentencing. It was the probation officer who made the recommendation of a vulnerable victim enhancement, as she was entitled to do.

Further, Lanier was convicted following a jury trial, so the government was not bound by a plea agreement regarding sentencing arguments. But even if the government were bound, the probation officer still would have been free to recommend the enhancement. The government often waives potential sentencing arguments when reaching a plea agreement with a defendant. *See United States v. Logan*, 542 F. App'x 484, 489 (6th Cir. 2013). But in the context of stipulations resulting from a plea agreement, this court reasoned that the "probation officer operates under the supervision of the [district] court, not the U.S. Attorney," so "the probation officer is no more bound by the stipulations than is the [district] court itself." *Gaines*, 888 F.2d at 1124 n.3 (citation omitted). So when the government agreed not to recommend or request sentencing enhancements because of a plea agreement, the probation office's recommendation of an enhancement was not attributable to the government even though the government provided factual information to the probation office that led to the enhancement being suggested. *United States v. Moncivais*, 492 F.3d 652, 664–65 (6th Cir. 2007). These cases underscore that the government's action, or inaction in this case, during a previous sentencing are not the actions of the probation officer and vice versa.

In short, the district court was entitled to accept the probation officer's recommendation of a vulnerable victim enhancement. It simply did not matter whether the government argued for that enhancement.

**II.**

The vulnerable victim enhancement requires a two-level increase "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim," and that enhancement should apply on the merits here, even if reviewed for abuse of discretion.  U.S.S.G. § 3A1.1(b)(1).  A vulnerable victim is "a victim of the offense of conviction and any conduct for which the defendant is accountable . . . who is unusually vulnerable due to *age*, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  U.S.S.G. § 3A1.1 cmt. app. n.2 (emphasis added).

The PSR stated that four children were present during the robbery from Count 3 of Lanier's conviction.  The children were two, five, seven, and eight years old.  *Id.*  According to testimony at trial, the perpetrators forced entry into the home while pointing a gun at the victims, which the children visibly reacted to before panicking and becoming frantic.  Then, one of the men forced the children into a bedroom in the home, separating them from the adults, and kept them in the bedroom throughout the robbery.

This court has held that, for this enhancement, "victim" is broadly interpreted and includes "someone 'harmed by a crime.'"  *United States v. Webster*, 615 F. App'x 362, 364 (6th Cir. 2015) (quoting *Black's Law Dictionary* 1798 (10th ed. 2014)).  The victim must only suffer "an individualized 'harm' distinct from injury to society at large."  *Id.*  Witnessing a forced entry of a home at gunpoint, before being corralled into and held within a bedroom, qualifies as a distinct injury because the emotional and psychological harm these vulnerable victims experienced would not be suffered by society at large.  And the Guidelines do not require the victims to be targeted because of their vulnerability.  *United States v. Brawner*, 173 F.3d 966, 973 (6th Cir. 1999).  So the facts of the robbery allow for a vulnerable victim enhancement in line with the Guidelines.

This court has affirmed vulnerable-victim enhancements in cases with similar facts before. *See United States v. McCaster*, 333 F. App'x 970, 974 (6th Cir. 2009); *see also United States v. Myree*, 89 F. App'x 565, 566–67 (6th Cir. 2004).  Thus the district did not err when including the vulnerable victim enhancement at Lanier's sentencing.

## III.

I therefore would affirm the district court's judgment regarding the vulnerable victim enhancement.